# EXHIBIT J

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>                        Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date: October 24, 2018 at 10:00 a.m. (ET)**<br><br>**Ref. Docket Nos. 2396, 2397, & 2398** |

## NOTICE OF FILING OF PLAN SUPPLEMENT DOCUMENTS

**PLEASE TAKE NOTICE** that, on August 22, 2018, the Court entered an order [Docket No. 2396] (the "Disclosure Statement Order") that, among other relief, (i) approved the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* [Docket No. 2398] as containing adequate information and (ii) authorized the above-captioned debtors and debtors in possession (the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* [Docket No. 2397] (as it may be amended, supplemented, or modified from time to time pursuant to the terms thereof, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Plan and the Disclosure Statement Order, the Debtors are filing this Plan Supplement on or before September 24, 2018.

---

[1]    The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

[2]    Capitalized terms not defined herein have the meanings given to those Defined Terms in the Plan.

01:23666314.2

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Section 1.77 of the Plan, the form of Liquidation Trust Agreement is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Section 1.121 of the Plan, the Schedule of Assumed Agreements is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Section 1.152 of the Plan, the form of Wind-Down Governance Agreement is attached hereto as **Exhibit C**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Section 5.3.1(a) of the Plan, a term sheet that includes the compensation terms for the Wind-Down CEO is attached hereto as **Exhibit D**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to amend, modify, or supplement this Plan Supplement (including the attached exhibits) in accordance with the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek confirmation of the Plan at a hearing on October 24, 2018 at 10:00 a.m. (Eastern Time) before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom No. 5, Wilmington, DE 19801.

Dated: September 24, 2018

*/s/ Ian J. Bambrick*
Young Conaway Stargatt & Taylor, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Betsy L. Feldman (No. 6410)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Tel:     (302) 571-6600
Fax:    (302) 571-1253

Klee, Tuchin, Bogdanoff & Stern LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

*Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

Liquidation Trust Agreement

# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (as it may be amended, modified, supplemented or restated from time to time, this "Agreement") dated as of _____, 2018, is made and entered into by and among the entities listed as "Debtors" on the signature pages hereto (each, a "Debtor") and Michael Goldberg, solely in his capacity as liquidation trustee for purposes of this Agreement (the "Liquidation Trustee"), and is executed in connection with and pursuant to the terms of the [*First*] *Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated [August 22], 2018 (as it may be amended, modified, supplemented or restated from time to time, the "Plan"), which Plan provides for, among other things, the establishment of the trust evidenced hereby (the "Liquidation Trust"). All capitalized terms which are used in this Agreement and not otherwise defined herein shall have the respective meanings ascribed to such Defined Terms in the Plan.

## WITNESSETH

WHEREAS, the Chapter 11 Cases were commenced by the Debtors filing voluntary chapter 11 petitions in the Bankruptcy Court on various dates between December 4, 2017, and March 27, 2018;

WHEREAS, the Bankruptcy Court confirmed the Plan by order dated [_____], 2018;

WHEREAS, this Agreement is entered into to effectuate the establishment of the Liquidation Trust as provided in the Plan and the Confirmation Order;

WHEREAS, the Liquidation Trust is established for the benefit of the Liquidation Trust Beneficiaries under the Plan;

WHEREAS, the Liquidation Trust is established (i) for the purpose of collecting, administering, distributing and liquidating the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of this Agreement and the Plan and (ii) to pay certain Allowed Claims and statutory fees, in each case to the extent required by the Plan;

WHEREAS, the Liquidation Trust shall have no objective or authority to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust as set forth in this Agreement and the Plan;

WHEREAS, the Plan provides that the Liquidation Trust Beneficiaries are entitled to their applicable Liquidation Trust Interests;

WHEREAS, pursuant to the Plan, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidation Trust Assets to the Liquidation Trust as a deemed transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust Beneficiaries on account of their Allowed Claims under the Plan, followed by a deemed transfer of the Liquidation Trust Assets by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the beneficial interests herein, and to treat the Liquidation Trust Beneficiaries as the grantors and owners of the Liquidation Trust in accordance with Treasury Regulation Section 301.7701-4;

WHEREAS, the Liquidation Trust is intended to be treated as a grantor trust for federal income tax purposes; and

WHEREAS, the Bankruptcy Court shall have jurisdiction over the Liquidation Trust, the Liquidation Trustee, and the Liquidation Trust Assets as provided herein and in the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Debtors and the Liquidation Trustee agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1     <u>Definitions</u>.

1.1.1.    "Agreement" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.2.    "Class A Transfer Restriction" shall have the meaning set forth in Section 6.5.1(a) hereof.

1.1.3.    "Class B Transfer Restriction" shall have the meaning set forth in Section 6.5.2(a) hereof.

1.1.4.    "Debtor" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.5.    "Liquidation Trust" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.6.    "Liquidation Trustee" shall mean (x) initially, the Person named in the introductory paragraph to this Agreement as the Liquidation Trustee, and (y) any successors or replacements duly appointed under the terms of this Agreement.

1.1.7.    "Plan" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.8.    "Statements" shall have the meaning set forth in Section 8.7 hereof.

1.1.9.    "Transfer" shall mean, with respect to a Liquidation Trust Interest, any transfer, sale, pledge, assignment, conveyance, gift, bequest, inheritance, grant, distribution, hypothecation or other disposition of or creation or a security interest in such Liquidation Trust Interest, whether voluntarily or by operation of law.  "Transferor," "Transferee," and "Transferred" shall have correlative meanings.

1.1.10.  "Transfer Agent" shall mean any independent third party institution selected by the Liquidation Trustee from time to time to act as transfer agent or registrar with respect to any of the Liquidation Trust Interests.

01:23653290.2

2

1.1.11. "Transfer Notice" shall have the meaning set forth in Section 6.5.4 hereof.

1.1.12. "Transfer Restriction" shall mean the Class A Transfer Restriction or the Class B Transfer Restrictions.

1.2     Plan Terms Control.  In the case of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control.  This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.3     Interpretation.  In this Agreement, except to the extent the context otherwise requires, (i) reference to any Section, Article, subsection, clause, Schedule, Exhibit, preamble or recital, is to that Section, Article, subsection, clause, Schedule, Exhibit, preamble or recital under this Agreement, (ii) the words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or article of this Agreement, (iii) references to any document or agreement, including this Agreement, shall be deemed to include references to such document or agreement as amended, supplemented, replaced or restated from time to time in accordance with its terms and subject to compliance with any requirements set forth therein, (iv) references to any law, statute, rule, regulation or form (including in the definition thereof) shall be deemed to include references to such statute, rule, regulation or form as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, include any rules and regulations promulgated under such statute), and all references to any section of any statute, rule, regulation or form include any successor to such section, (v) references to any party hereto shall include its successors and permitted assigns, (vi) wherever the word "include," "includes" or "including" is used herein, it shall be deemed to be followed by the words "without limitation," and any list of examples following such term shall in no way restrict or limit the generality of the word or provision with respect to which such examples are provided, (vii) the words "shall" and "will" are used interchangeably throughout this Agreement, and the use of either connotes a mandatory requirement, (viii) the word "or" is not meant to be exclusive, and shall be interpreted as "and/or", (ix)  references to "day" or "days" are references to calendar days, (x) the terms "Dollars" and "$" mean United States Dollars, (xi) whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine and (xii) references to any time periods herein that are initiated by the receipt of a notice shall be deemed not to include the date such notice is received in the calculation of such time period.

## ARTICLE II
## ESTABLISHMENT, PURPOSE AND FUNDING OF LIQUIDATION TRUST

2.1     Creation and Name.  There is hereby created the Liquidation Trust, which is referred to in Article V and certain other sections of the Plan.  The Liquidation Trustee may conduct the affairs of the Liquidation Trust under the name of the "Woodbridge Liquidation Trust".

2.2     Purpose of Liquidation Trust.  The Debtors and the Liquidation Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, hereby establish the Liquidation Trust (i) for the purpose of collecting, administering, distributing and liquidating the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of this Agreement and the Plan and (ii) to pay certain Allowed Claims and statutory fees, in

each case to the extent required by the Plan.  The Debtors shall have no liability with respect to the distribution or payment of any proceeds of the Liquidation Trust Assets to any of the Liquidation Trust Beneficiaries or other holders of Allowed Claims.  The activities of the Liquidation Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan.  The Liquidation Trustee understands and agrees that the Liquidation Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust as set forth in the Plan.

2.3    Transfer of Liquidation Trust Assets.

2.3.1.    Each Debtor hereby grants, releases, assigns, conveys, transfers and delivers, on behalf of the Liquidation Trust Beneficiaries, all of the Liquidation Trust Assets owned, held, possessed or controlled by such Debtor to the Liquidation Trustee as of the Effective Date, in trust for the benefit of the Liquidation Trust Beneficiaries for the uses and purposes as specified in this Agreement and the Plan.  None of the Debtors shall have any further obligations with respect to the Allowed Claims under the Plan or the distribution or payment of any proceeds of the Liquidation Trust Assets to any of the Liquidation Trust Beneficiaries or other holders of Allowed Claims upon the transfer of the Liquidation Trust Assets to the Liquidation Trustee in accordance with this Agreement and the Plan.  The Remaining Debtors shall from time to time execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Remaining Debtors shall take or cause to be taken such further action, in each case as the Liquidation Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Liquidation Trustee title to and possession of the Liquidation Trust Assets.  None of the foregoing transfers to the Liquidation Trust shall constitute a merger or consolidation of any of the respective Causes of Action, Avoidance Actions, or Contributed Claims, each of which shall retain its separateness following the transfer for all purposes relevant to the prosecution thereof.

2.3.2.    For all federal, state and local income tax purposes, the Debtors, the Liquidation Trust Beneficiaries, and the Liquidation Trustee shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as a deemed transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust Beneficiaries on account of their Allowed Claims under the Plan, followed by a deemed transfer of the Liquidation Trust Assets by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for their beneficial interests in the Liquidation Trust.  Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust for federal income tax purposes.

2.3.3.    To the extent that any Liquidation Trust Assets cannot be transferred to the Liquidation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidation Trust Assets shall be deemed to have been retained by the Remaining Debtors and the Liquidation Trustee shall be deemed to have been designated as a representative of the Remaining Debtors pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidation Trust Assets on their behalf.  Notwithstanding the foregoing, all proceeds of such Liquidation Trust Assets (net of all reasonable costs and expenses (including the reasonable fees and expenses of professionals)) shall be transferred to the Liquidation Trust to be distributed in accordance with this Agreement and the terms of the Plan.

2.4    <u>Nature of Trust</u>. The Liquidation Trust is irrevocable but subject to amendment and waiver as provided in this Agreement. The Liquidation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, limited liability partnership, joint venture, corporation, limited liability company, joint stock company or association, nor shall the Liquidation Trustee, or the Liquidation Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Liquidation Trust Beneficiaries, on the one hand, to the Liquidation Trust and the Liquidation Trustee, on the other hand, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement, the Plan and the Confirmation Order.

2.5    <u>Effectiveness</u>. This Agreement, the establishment of the Liquidation Trust and the transfer of Liquidation Trust Assets to the Liquidation Trust pursuant to Section 2.3 hereof shall be effective on the Effective Date immediately prior to the dissolution of the Debtors (other than the Remaining Debtors) under Section [5.2.3] of the Plan.

**ARTICLE III**
**LIQUIDATION TRUST SUPERVISORY BOARD**

3.1    <u>Liquidation Trust Supervisory Board</u>. The initial members of the Liquidation Trust Supervisory Board shall be [___], [___], [___], [___] and [___]. The Liquidation Trust Supervisory Board shall have all the rights and powers of a duly elected board of directors of a Delaware corporation and shall supervise the Liquidation Trustee in accordance with this Agreement and the Plan. Except as otherwise set forth herein, approval of a simple majority of the members of such Liquidation Trust Supervisory Board shall be required for the Liquidation Trust Supervisory Board to act on any matter. In the event that a Liquidation Trust Supervisory Board shall not continue to exist under this Agreement, the Liquidation Trustee shall have all the rights and powers of a duly elected board of directors of a Delaware corporation and all references herein to required approval or other action of such Liquidation Trust Supervisory Board shall be of no force or effect. On or promptly following the Effective Date, the Liquidation Trust Supervisory Board shall adopt by-laws that are consistent with the terms and conditions of this Agreement.

3.2    <u>Resignation/Replacement/Removal of Member of Liquidation Trust Supervisory Board</u>. A member of the Liquidation Trust Supervisory Board may resign following written notice to the Liquidation Trustee and the other members of the Liquidation Trust Supervisory Board. Such resignation will become effective on the later to occur of (i) the day specified in such written notice and (ii) the date that is thirty (30) days after the date such notice is delivered. A member of the Liquidation Trust Supervisory Board may only be removed by entry of a Bankruptcy Court order finding that cause exists to remove such member. In the event that a member of the Liquidation Trust Supervisory Board is removed in accordance with the immediately preceding sentence, dies, becomes incapacitated, resigns or otherwise becomes unavailable for any reason, such member's replacement shall be appointed in accordance with the Plan.

3.3    <u>Compensation</u>. Each member of the Liquidation Trust Supervisory Board shall receive the following compensation in respect of his or her service on the Liquidation Trust Supervisory Board: (i) for each calendar month of service shall be $10,000 monthly for the first twelve months from and after the Effective Date (counting the month of the Effective Date as the

5

first calendar month even if it is a partial calendar month), (ii) $7,500 monthly for the thirteenth through twenty-fourth calendar months after the Effective Date, (iii) $5,000 monthly for the twenty-fifth through thirty-sixth calendar months after the Effective Date, and (iv) $2,500 monthly for each calendar month thereafter until termination of the Liquidation Trust in accordance with the Plan (prorated as appropriate if a member commences his or her service other than on the first day of a month or terminates his or her service other than on the last day of a month). The members of the Liquidation Trust Supervisory Board shall also be entitled to reimbursement from the Liquidation Trust Assets of all actual, reasonable and documented out-of-pocket costs and expenses incurred thereby in connection with their service on the Liquidation Trust Supervisory Board. Except for (i) the compensation and expense reimbursement set forth in this Section 3.3 and (ii) indemnification as set forth in Article VII hereof, the members of the Liquidation Trust Supervisory Board shall receive no compensation or other payment for the performance of their duties hereunder.

3.4     Confidentiality. Each member of the Liquidation Trust Supervisory Board shall, while serving as a member of the Liquidation Trust Supervisory Board under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Liquidation Trust Assets relate or of which he or she has become aware in his or her capacity as a member of the Liquidation Trust Supervisory Board.

3.5     Disclosure of Personal Information. In connection with the initial registration of any Class A Litigation Trust Interests under the Exchange Act, and thereafter so long as Class A Litigation Trust Interests continue to be a class of equity securities registered under the Exchange Act, each member of the Liquidation Trust Supervisory Board shall provide such personal biographical and other information, including but not limited to educational background, business experience, business affiliations, and conflicts of interest (actual or potential) that such member or such member's firm may have with respect to the exercise of such member's duties under this Agreement or the Plan, as may be required to be disclosed in any Form 10, current or periodic report from time to time required to be filed, or otherwise pursuant to the Exchange Act. Each member of the Liquidation Trust Supervisory Board shall, at the request of the Liquidation Trustee, certify in writing the truth and accuracy of any personal information of such member provided pursuant to this Section 3.5. Each member of the Liquidation Trust Supervisory Board shall indemnify the Liquidation Trust, the Liquidation Trustee, the other members of the Liquidation Trust Supervisory Board, and the Liquidation Trust's officer and employees from and against the making, in any registration statement or report filed under the Exchange Act, of any untrue statement of a material fact or the omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in each case to the extent that such misstatement or omission is based on information provided by such member.

## ARTICLE IV
## ADMINISTRATION OF THE LIQUIDATION TRUST

4.1     Rights, Powers and Privileges. In connection with the administration of the Liquidation Trust, except as set forth in this Agreement and the Plan, the Liquidation Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Liquidation Trust (including, without limitation, all powers, rights, and duties under applicable law). In connection therewith, and subject to the limitations of Section 4.4 hereof, the Liquidation Trustee shall have absolute discretion to pursue or not to pursue any and all Claims, rights, Contributed

Claims, or other Causes of Action, as he or she determines are in the best interests of the Liquidation Trust Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of his or her decision.  Without limiting the foregoing, but subject to the limitations in this Agreement, the Liquidation Trustee shall be expressly authorized, but shall not be required, to take the actions set forth in Section [5.4.5] of the Plan.

4.2     Agents and Professionals.  The Liquidation Trustee and the Liquidation Trust Supervisory Board may, but shall not be required to, consult with and retain attorneys, accountants, real estate brokers, appraisers, valuation counselors, transfer agents, or other parties deemed by the Liquidation Trustee or the Liquidation Trust Supervisory Board, as the case may be, to have qualifications necessary to assist in the proper administration of the Liquidation Trust.  The Liquidation Trustee may pay the reasonable salaries, fees and expenses of such persons (including himself/herself), including contingency fees, out of the Liquidation Trust Assets, subject to the provisions of Section 8.7 hereof.

4.3     Investment and Safekeeping of Liquidation Trust Assets.  All monies and other Liquidation Trust Assets received by the Liquidation Trustee shall, until distributed or paid as provided in this Agreement or the Plan, be held in the Liquidation Trust or the Wind-Down Entity for the benefit of the Liquidation Trust Beneficiaries.  The Liquidation Trustee shall be under no obligation to generate or produce, or any liability for, interest or other income on any monies received by the Liquidation Trust and held for distribution or payment to the Liquidation Trust Beneficiaries, except as such interest shall be actually received by the Liquidation Trustee.  Investments of any monies held by the Liquidation Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Liquidation Trustee to invest monies held by the Liquidation Trustee, the proceeds from any sale of Liquidation Trust Assets, or any income earned by the Liquidation Trust shall be limited to the right and power to invest such monies, pending periodic distributions in accordance with the terms hereof and the Plan.  For the avoidance of doubt, the investment powers of the Liquidation Trustee in this Agreement, other than those reasonably necessary to maintain the value of the Liquidation Trust Assets and the Liquidation purpose of the Liquidation Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

4.4     Limitations on Liquidation Trustee.  On behalf of the Liquidation Trust or the Liquidation Trust Beneficiaries, the Liquidation Trustee shall not at any time: (i) enter into or engage in any trade or business (other than the management and disposition of the Liquidation Trust Assets), and no part of the Liquidation Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidation Trust in furtherance of any trade or business, or (ii) except as provided in Section 4.3 and below, reinvest any Liquidation Trust Assets.

4.4.1.  The Liquidation Trustee must consult with, and obtain approval of, the Liquidation Trust Supervisory Board or, in the absence of such approval, an order of the Bankruptcy Court concerning any matter involving any sale or other disposition of an asset of the Liquidation Trust, or any release, modification or waiver of existing rights as to an asset of the Liquidation Trust, if the asset at issue exceeds $500,000.00 in value (provided that the Liquidation Trust Supervisory Board shall be conclusively presumed to have approved any such sale or disposition if it fails to

object thereto in a writing received by the Liquidation Trustee within ten (10) Business Days following written notification to the Liquidation Trust Supervisory Board by the Liquidation Trustee of the intended sale or disposition, with such approval to be deemed to have been irrevocably given in respect of the terms and conditions of such sale or disposition set forth in such notification).

4.4.2.    The Liquidation Trustee must consult with, and obtain approval of, the Liquidation Trust Supervisory Board or, in the absence of such approval, an order of the Bankruptcy Court concerning any compromise or settlement of litigation or controverted matter proposed by the Liquidation Trustee involving claims in excess of $500,000.00 (provided that the Liquidation Trust Supervisory Board shall be conclusively presumed to have approved any such compromise or settlement if it fails to object thereto in a writing received by the Liquidation Trustee within ten (10) Business Days following written notification to the Liquidation Trust Supervisory Board by the Liquidation Trustee of the intended compromise or settlement, with approval thereof to be deemed to have been irrevocably given in respect of the terms and conditions of such compromise or settlement set forth in such notification).

4.4.3.    The Liquidation Trustee must consult with, and obtain approval of, the Liquidation Trust Supervisory Board or, in the absence of such approval, an order of the Bankruptcy Court concerning the retention by the Liquidation Trustee of professionals (provided that the Liquidation Trust Supervisory Board shall be conclusively presumed to have approved any such retention if it fails to object thereto in a writing received by the Liquidation Trustee within ten (10) Business Days following written notification to the Liquidation Trust Supervisory Board by the Liquidation Trustee of the intended retention).

4.4.4.    Other than as contemplated by the Plan or this Agreement, the Liquidation Trustee is not empowered to incur indebtedness.

4.4.5.    The Liquidation Trustee may invest Cash of the Liquidation Trust, including any earnings thereon or proceeds therefrom, any Cash realized from the liquidation of the Liquidation Trust Assets, or any Cash that is remitted to the Liquidation Trust from the Wind-Down Entity or any other Person, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); provided, however, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.  The Liquidation Trustee shall have no liability in the event of the insolvency or failure of any institution in which he or she has invested any funds of the Liquidation Trust.

4.4.6.    The Liquidation Trustee shall hold, collect, conserve, protect and administer the Liquidation Trust Assets in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.  Subject to the standard of care set forth in Section 7.2, any determination by the Liquidation Trustee as to what actions are in the best interests of the Liquidation Trust shall be determinative.

4.4.7.    The Liquidation Trustee shall disclose to the Liquidation Trust Supervisory Board any connections, conflicts or potential conflicts of interest that the Liquidation Trustee or the Liquidation Trustee's firm has with respect to the exercise of any rights, powers, duties and

privileges under this Agreement or the Plan. In the event that the Liquidation Trustee cannot take any action, including the prosecution of any claims or the objection to any claims, by reason of an actual or potential conflict of interest, the Liquidation Trust Supervisory Board shall be authorized to take any such action(s) in place of the Liquidation Trustee, including by the retention of professionals (which may include professionals retained by the Liquidation Trustee) for the purpose of taking such actions.

4.5     Bankruptcy Court Approval of Liquidation Trustee Actions. Except as provided in the Plan or otherwise specified in this Agreement, the Liquidation Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. The Liquidation Trustee shall exercise his or her business judgment for the benefit of the Liquidation Trust Beneficiaries in order to maximize the value of the Liquidation Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Liquidation Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidation Trust with respect to any of the Liquidation Trust Assets, this Agreement, or the Plan, including the administration, distribution, or proposed sale of any of the Liquidation Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidation Trust.

4.6     Reliance by Liquidation Trustee and the Liquidation Trust Supervisory Board:

(a)     The Liquidation Trustee and members of the Liquidation Trust Supervisory Board may, subject to the standard of care set forth in Section 7.2, rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties;

(b)     The Liquidation Trustee and members of the Liquidation Trust Supervisory Board may consult with any and all professionals to be selected by them and the Liquidation Trustee and members of the Liquidation Trust Supervisory Board shall not, subject to the standard of care set forth in Section 7.2, be liable for any action taken or omitted to be taken by them in accordance with the advice of such professionals; and

(c)     Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of this Liquidation Trust Agreement, and neither the Liquidation Trustee nor any member of the Liquidation Trust Supervisory Board shall have any personal obligation to satisfy any such liability.

4.7     Valuation of Liquidation Trust Assets. The Liquidation Trustee shall apprise the Liquidation Trust Beneficiaries of the value of the Liquidation Trust Assets. The Debtors, the

01:23653290.2

9

Liquidation Trust Beneficiaries, and the Liquidation Trust will consistently report the valuation of the assets transferred to the Liquidation Trust.  Such consistent valuations and revised reporting will be used for all federal, state, local, or other income tax purposes. Income, deductions, gain, or loss from the Liquidation Trust shall be reported to the beneficiaries of the Liquidation Trust in conjunction with the filing of the Liquidation Trust's income tax returns.  Each Liquidation Trust Beneficiary shall report income, deductions, gain, or loss on such Liquidation Trust Beneficiary's income tax returns. Any dispute regarding the valuation of Liquidation Trust Assets shall be resolved by the Bankruptcy Court.

## ARTICLE V
## DISTRIBUTIONS FROM THE LIQUIDATION TRUST

5.1     Distributions.  From time to time after the Effective Date, as and to the extent required by the Plan, the Liquidation Trustee shall (a) make distributions to Liquidation Trust Beneficiaries in respect of their Liquidation Trust Interests from Available Cash in accordance with the Liquidation Trust Interests Waterfall and (b) pay certain Allowed Claims to the extent required by the Plan.

5.2     Provisions Governing Distributions.   All distributions to be made under this Agreement shall be made in accordance with Section 1.84, Section 5.4.10 and Article VII of the Plan, which are incorporated by reference herein.

5.3     Timing of Distributions.  Any payment or other distribution required to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day. All payments or distributions due on the Effective Date shall be made thereon or as soon as practicable thereafter.  Any payment of Cash made pursuant to this Plan shall be deemed made when such payment by check or wire transfer is transmitted.   This Section 5.3 shall be subject to Article VII of the Plan.

5.4     Payments Limited to Liquidation Trust Assets.  All payments to be made by the Liquidation Trustee to or for the benefit of any Liquidation Trust Beneficiary shall be made only to the extent that the Liquidation Trustee has sufficient reserves to make such payments in accordance with this Agreement and the Plan.  Each Liquidation Trust Beneficiary shall have recourse only to the Liquidation Trust Assets for distribution under this Agreement and the Plan. This Section 5.4 shall be subject to Article VII of the Plan.

5.5     Fees and Expenses.

5.5.1.   Subject to the limitations set forth herein and in the Plan, the Liquidation Trustee must pay or establish a reasonable reserve for the operating and administrative expenses of the Liquidation Trust (including making any payments in respect of Allowed Claims that may be required under the Plan) before approving distributions to or for the benefit of Liquidation Trust Beneficiaries.

5.5.2.   The Liquidation Trustee shall satisfy any fees and expenses of the Liquidation Trust with the Liquidation Trust Assets to the extent available.

5.5.3.   The Liquidation Trust shall pay any and all fees that are required to be paid by the Liquidation Trust under Section 11.3 of the Plan.

5.6   <u>Priority of Distributions</u>.  Any recovery by the Liquidation Trust on account of the Liquidation Trust Assets shall be applied in accordance with the Plan.

5.7   <u>Compliance with Laws</u>.  Any and all distributions of Liquidation Trust Assets shall be in compliance with applicable laws.

5.8   <u>Setoff Rights</u>.  The Liquidation Trustee may, but shall not be required to, setoff against or recoup from the holder of any Allowed Claim (including any Liquidation Trust Beneficiary) on which payments or other distributions are to be made hereunder, claims of any nature that the Liquidation Trust may have against such Person.  However, neither the failure to do so, nor the allowance of any Claim under the Plan or otherwise, shall constitute a waiver or release of any such claim, right of setoff or right of recoupment against the holder of such Allowed Claim.

5.9   <u>Right to Object to Claims</u>.  Subject to the following sentence and except for those Claims that are expressly the responsibility of the Wind-Down Entity under the Plan, the Liquidation Trustee shall have the responsibility and authority for administering, disputing, objecting to, compromising and settling or otherwise resolving and finalizing payments or other distributions with respect to Claims under the Plan (including in respect of any Liquidation Trust Interests).  The Liquidation Trustee shall generally prosecute objections to Claims pending as of the Effective Date and any additional objections filed from and after the Effective Date.  In addition, subject to the foregoing sentence, the Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate any Contingent Claim, Disputed Claim or Unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether any party previously objected to or sought estimation of such Claim.

5.10   <u>No Distributions Pending Allowance</u>.  If a Claim or any portion of a Claim is Disputed, no payment or distribution shall be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or portion thereof becomes an Allowed Claim.

## ARTICLE VI
## BENEFICIARIES

6.1   <u>Identification of Liquidation Trust Beneficiaries</u>.  In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee may deliver a notice to the Liquidation Trust Beneficiaries.  Such notice may include a form for each Liquidation Trust Beneficiary to complete in order to be properly registered as a Liquidation Trust Beneficiary and be eligible for distributions under the Liquidation Trust.  Such form may request the Liquidation Trust Beneficiary's federal taxpayer identification number or social security number if the Liquidation Trustee determines that such information is necessary to fulfill his or her tax reporting and withholding obligations.  The Liquidation Trustee, in his or her reasonable discretion, may suspend distributions to any Liquidation Trust Beneficiary that has not provided its federal taxpayer identification number or social security number, as the case may be, after a request is made pursuant to this Section 6.1.  If tax information is not provided within one hundred eighty (180) days after

such request, the applicable Liquidation Trust Beneficiary's underlying claim will be expunged and its Liquidation Trust Interest disallowed for all purposes of this Agreement to the extent provided under the Plan. Each Liquidation Trust Beneficiary's Liquidation Trust Interest is dependent upon such Liquidation Trust Beneficiary's classification under the Plan and the status of its Allowed Claim.

6.2    <u>Beneficial Interest Only</u>.  The ownership of a Liquidation Trust Interest shall not entitle any Liquidation Trust Beneficiary to any title in or to any of the Liquidation Trust Assets or to any right to call for a partition or division of such Liquidation Trust Assets or to require an accounting, except as specifically provided herein. Except as expressly provided in this Agreement, a Liquidation Trust Beneficiary shall not have standing to direct or to seek to direct the Liquidation Trust or Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidation Trust Assets.

6.3    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Liquidation Trust Beneficiary shall own a beneficial interest in the Liquidation Trust (as represented by the Liquidation Trust Interest(s) issued to such Liquidation Trust Beneficiary) in accordance with the Plan. The record holders of the Liquidation Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the Liquidation Trustee expressly for such purpose. Such obligation may be satisfied by the Liquidation Trust's retention of a Transfer Agent for the maintenance of such registry and, so long as a registry of the Liquidation Trust Interests is maintained by a Transfer Agent, such Liquidation Trust Interests need not be registered on the books and records of the Liquidation Trust.

6.4    <u>Evidence of Beneficial Interest</u>.

6.4.1.    Unless otherwise determined by the Liquidation Trustee, ownership of a Liquidation Trust Interest shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever. Except as set forth in Section 6.4.2 hereof, ownership of the Liquidation Trust Interests shall be maintained on books and records of the Liquidation Trust maintained by the Liquidation Trustee or on behalf of the Liquidation Trust on the books and records of a Transfer Agent.

6.4.2.    Upon or in connection with the effectiveness of an Exchange Act Registration of the Class A Liquidation Trust Interests, the Liquidation Trustee may, in its discretion, determine that the Class A Liquidation Trust Interests shall be evidenced by book-entry form represented by one or more global certificates registered in the name of DTC, as depository, or Cede & Co., its nominee, for so long as DTC is willing to act in that capacity. The Liquidation Trustee shall use its commercially reasonable best efforts to give prompt notice of any such determination to the holders of the Class A Liquidation Trust Interests. Any such notice may be provided or made available, in the discretion of the Liquidation Trustee, by any reasonable means, including U.S. mail, electronic transmission, display on IntraLinks or a similar virtual data room to which holders shall have access, or publication to a publicly-available website or by press release distributed via a generally recognized business news service. If the Class A Liquidation Trust Interests are registered in book-entry form, the Liquidation Trustee shall use its commercially reasonable best efforts to facilitate the transfer of the Class A Liquidation Trust Interests through the DTC participant system (as necessary). If the Class A Liquidation Trust Interests are registered in book-entry form, the

Liquidation Trustee shall be under no obligation to provide the holders of Class A Liquidation Trust Interests with actual physical certificates representing their Class A Liquidation Trust Interests, and the Class A Liquidation Trust Interests need no longer be registered on the books and records of the Liquidation Trust or with any Transfer Agent.

6.5    Transfer of Liquidation Trust Interests.

6.5.1.    Restriction on Transfer of Class A Liquidation Trust Interests.

(a)    Subject to Section 6.5.1(b) hereof, the Class A Liquidation Trust Interests shall not be Transferred, except by operation of law or by will or the laws of descent and distribution, in each case following written notice to the Liquidation Trustee in accordance with Section 6.5.4 hereof.

(b)    The restriction on transfer set forth in Section 6.5.1(a) hereof (the "Class A Transfer Restriction") shall be in effect with respect to all Class A Liquidation Trust Interests from the time of issuance thereof on the Effective Date until the effectiveness of an Exchange Act Registration of the Class A Liquidation Trust Interests, at which time (i) the Class A Transfer Restriction shall terminate and cease to be of any force or effect and (ii) the Class A Liquidation Trust Interests may be Transferred by the holders thereof to the extent otherwise permissible under applicable law.  The Liquidation Trust shall use its commercially reasonable best efforts to cause an Exchange Act Registration of the Class A Liquidation Trust Interests to become effective, and for the Class A Liquidation Trust Interests to be quoted with an OTC ticker symbol, as soon as reasonably practicable after the Effective Date, but in no event shall the Liquidation Trust file an Exchange Act registration statement any later than may be required under section 12(g) of the Exchange Act or the rules and regulations promulgated thereunder.

6.5.2.    Restriction on Transfer of Class B Liquidation Trust Interests.

(a)    Subject to Section 6.5.2(b) hereof, the Class B Liquidation Trust Interests shall not be Transferred except by operation of law or by will or the laws of descent and distribution, in each case following written notice to the Liquidation Trustee in accordance with Section 6.5.4 hereof.

(b)    The restriction on transfer set forth in Section 6.5.2(a) hereof (the "Class B Transfer Restriction") shall be in effect with respect to all Class B Liquidation Trust Interests from the time of issuance thereof on the Effective Date until the earlier to occur of (a) the effectiveness of an Exchange Act Registration of the Class B Liquidation Trust Interests or (b) the Liquidation Trustee has given notice to the holders of the Class B Liquidation Trust Interests of the Liquidation Trustee's good faith determination, in its discretion, that termination of the Class B Transfer Restriction not require the Class B Liquidation Trust Interests to be registered under section 12(g) of the Exchange Act.  Upon the occurrence of an event described in (a) or (b) of the preceding sentence, (i) the Class B Transfer Restriction shall terminate and cease to be of any force or effect and (ii) the Class B Liquidation Trust Interests may be Transferred by the holders thereof to the extent otherwise permissible under applicable law. The Liquidation Trust shall not be under any obligation (and does not currently intend) to make any effort to cause the Class B Liquidation Trust

Interests to be registered under the Exchange Act or otherwise to facilitate the trading of, or the development of any trading market for, the Class B Liquidation Trust Interests.

      6.5.3.  <u>Notice of Termination of Transfer Restrictions</u>.  Upon any termination of a Transfer Restriction (whether such termination is by reason of the effectiveness of an Exchange Act Registration or a determination by the Liquidation Trustee that termination of a Transfer Restriction would not require registration under section 12(g) of the Exchange Act), the Liquidation Trustee shall use commercially reasonable best efforts promptly thereafter to notify the holders of the Liquidation Trust Interests with respect to which such Transfer Restriction termination has occurred. Any such notice may be provided or made available, in the discretion of the Liquidation Trustee, by any reasonable means, including U.S. mail, electronic transmission, display on IntraLinks or a similar virtual data room to which holders shall have access, or publication to a publicly-available website or by press release distributed via a generally recognized business news service.

      6.5.4.  <u>Notice of Certain Transfers</u>.  In the case of any Transfer, notice of which is required to be given under Section 6.5.1 or Section 6.5.2 hereof, such notice (a "Transfer Notice") shall be given to the Liquidation Trustee by registered or certified mail in accordance with this Section 6.5.4 and Section 11.2 hereof, and shall be Filed with the Bankruptcy Court. A Transfer Notice shall (a) state the names, addresses and, if the Liquidation Trustee determines that such information is necessary to fulfill his or her tax reporting and withholding obligations, the federal taxpayer identification numbers or social security numbers of the Transferor and Transferee, (b) clearly identify the class and the amount of the Liquidation Trust Interest to be Transferred, and (c) be executed by both the Transferor (or the Transferor's personal representative) and the Transferee, with such signatures acknowledged before a notary public and as required by Bankruptcy Rule 3001(e). The Liquidation Trustee may conclusively rely upon such signatures and acknowledgments as evidence of such Transfer without the requirement of any further investigation. Notwithstanding anything to the contrary in this Section 6.5, no Transfer notice of which is required to be given under Section 6.5.1 or Section 6.5.2 hereof shall be effective until a Transfer Notice is given in accordance with this Section 6.5.4, and the Liquidation Trustee may continue to pay all amounts to or for the benefit of the assigning or transferring Liquidation Trust Beneficiary until receipt of such Transfer Notice. The Liquidation Trustee may rely upon such proof without the requirement of any further investigation.

      6.5.5.  <u>Invalidity of Restricted Transfers</u>.  Any attempted Transfer in violation of any Transfer Restriction shall be void *ab initio*. The Liquidation Trustee shall not be authorized or obligated to effect any Transfer or treat any purported Transferee as holder of record or beneficial owner of any Litigation Trust Interest, the Transfer of which is void *ab initio* under this paragraph. The Liquidation Trustee may institute legal proceedings to force rescission of a Transfer prohibited by this Agreement and to seek any other remedy available to it at law, in equity or otherwise, including an injunction prohibiting any such Transfer.

## ARTICLE VII
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

      7.1  <u>Parties Dealing With the Liquidation Trustee</u>.  In the absence of actual knowledge to the contrary, any Person dealing with the Liquidation Trust or the Liquidation Trustee shall be entitled to rely on the authority of the Liquidation Trustee or any of the Liquidation Trustee's agents

to act in connection with the Liquidation Trust Assets.  No Person that may deal with the Liquidation Trustee shall have any obligation to inquire into the validity or expediency or propriety of any transaction by the Liquidation Trustee or any agent of the Liquidation Trustee.

7.2     Limitation of Liquidation Trustee's Liability.  Anything herein to the contrary notwithstanding, in exercising the rights granted herein, the Liquidation Trustee shall exercise his or her best judgment, to the end that the affairs of the Liquidation Trust shall be properly managed and the interests of all the Liquidation Trust Beneficiaries are safeguarded; but the Liquidation Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, unless the Liquidation Trustee has acted with gross negligence, fraud or willful misconduct.

7.3     Indemnification.  The Liquidation Trustee, the Liquidation Trust Supervisory Board and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, Transfer Agents, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors (each, an "Indemnified Party") shall be indemnified for, and defended and held harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud.  In addition, to the fullest extent permitted by law, each Indemnified Party shall be indemnified for, and defended and held harmless against, any and all losses, liabilities, damages, judgments, fines, penalties, claims, demands, settlements, costs, and expenses, including the reasonable fees and expenses of their respective professionals arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust or the implementation or administration of the Plan if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidation Trust or the Liquidation Trust Beneficiaries.  The amounts necessary for the indemnification provided in this Section 7.3 (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section 7.3) shall be paid by the Liquidation Trustee out of the Liquidation Trust Assets, except as otherwise provided in the Plan.  The Liquidation Trustee shall not be personally liable for the payment of any Liquidation Trust expense or claim or other liability of the Liquidation Trust, and no Person shall look to the Liquidation Trustee personally for the payment of any such expense or liability.  The indemnification provided in this Section 7.3 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Liquidation Trustee or an indemnified member of the Liquidation Trust Supervisory Board, or the termination of the Liquidation Trust, and shall inure to the benefit of each Indemnified Person's heirs and assigns.

01:23653290.2

## ARTICLE VIII
## SELECTION, REMOVAL AND COMPENSATION OF LIQUIDATION TRUSTEE

8.1 <u>Term of Service</u>.  The Liquidation Trustee shall serve until the earlier to occur of (a) the termination of the Liquidation Trust in accordance with this Agreement and the Plan or (b) the Liquidation Trustee's death, resignation or removal.

8.2 <u>Removal of a Liquidation Trustee</u>.  Any Person serving as Liquidation Trustee may be removed and replaced by an order of the Bankruptcy Court upon the motion of the Liquidation Trust Supervisory Board and a showing of good cause; *provided, however*, that the proposed removal and replacement of Michael Goldberg as Liquidation Trustee will require a determination by the Bankruptcy Court that "cause" exists for such removal and replacement using the standard under Bankruptcy Code section 1104 made after notice of such proposed removal and replacement has been provided to the SEC.  The removal shall be effective on the date specified in the order. Notwithstanding the removal of the Liquidation Trustee pursuant to this Section 8.2, the rights of the resigning Liquidation Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such resigning Liquidation Trustee following the effectiveness of such resignation.

8.3 <u>Resignation of Liquidation Trustee</u>.  The Liquidation Trustee may resign at any time by giving the Liquidation Trust Beneficiaries and Liquidation Trust Supervisory Board at least sixty (60) days written notice of his or her intention to do so.  Without limiting any other reporting or accounting obligations under the Plan or this Agreement, in the event of a resignation, the resigning Liquidation Trustee shall render to the Liquidation Trust Beneficiaries a full and complete written accounting of monies and Liquidation Trust Assets received, disbursed, and held during the term of office of that Liquidation Trustee.  The resignation shall be effective on the later to occur of: (i) the date specified in the notice; or (ii) the appointment of a successor by the Liquidation Trust Supervisory Board, the acceptance by such successor of such appointment and the approval of the Bankruptcy Court; <u>provided</u>, that if a successor Liquidation Trustee is not appointed or does not accept his or her appointment or if the appointment of a successor Trustee has not been approved by the Bankruptcy Court within sixty (60) days following delivery of notice of resignation, the resigning Liquidation Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidation Trustee.  Notwithstanding the resignation of the Liquidation Trustee pursuant to this Section 8.3, the rights of the resigning Liquidation Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Liquidation Trustee following the effectiveness of such resignation.

8.4 <u>Appointment of Successor Liquidation Trustee</u>.  Upon the resignation, death, incapacity, or removal of a Liquidation Trustee, the Liquidation Trust Supervisory Board shall appoint a successor Liquidation Trustee to fill the vacancy so created, subject to the approval of the Bankruptcy Court so long as any of the Chapter 11 Cases are pending.  Any successor Liquidation Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Liquidation Trustee.

8.5 <u>Powers and Duties of Successor Liquidation Trustee</u>.  A successor Liquidation Trustee shall have all the rights, privileges, powers, and duties of his or her predecessor under this

Agreement and the Plan. Notwithstanding anything to the contrary herein, a removed or resigning Liquidation Trustee shall, when requested in writing by the successor Liquidation Trustee, execute and deliver an instrument or, instruments conveying and transferring to such successor Liquidation Trustee under the Liquidation Trust all the estates, properties, rights, powers, and trusts of such predecessor Liquidation Trustee.

8.6    <u>Liquidation Trust Continuance</u>. The death, resignation or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any then-existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidation Trustee. In the event that a successor Liquidation Trustee is not appointed within thirty (30) days of when required under this Agreement, any Liquidation Trust Beneficiary may apply to the Bankruptcy Court for appointment of a successor Liquidation Trustee upon notice to the Liquidation Trust Supervisory Board.

8.7    <u>Compensation and Costs of Administration</u>. The Liquidation Trustee shall receive fair and reasonable compensation for his or her services in accordance with Schedule A, which shall be charged against and paid out of the Liquidation Trust Assets (subject to the limitations set forth in this Agreement and the Plan), <u>provided</u>, that no compensation may be paid to the Liquidation Trustee or his or her professionals unless and until the following procedures have been followed with respect to any individual request for compensation: (i) the Liquidation Trustee shall submit to the Liquidation Trust Supervisory Board a statement or statements ("Statements") reflecting all fees (itemized, as applicable, to indicate the individual performing services, such individual's billable rate, a description of the services performed, the time spent, and the fees incurred) and itemized costs to be reimbursed, (ii) the amount reflected in any such Statements may be paid by the Liquidation Trust after seven (7) days after the delivery of the Statements as specified in clause (i) above, unless prior to the expiration of such seven-day period, the Liquidation Trust Supervisory Board shall have objected in writing to any compensation reflected in the Statement, in which case the undisputed amounts may be paid and the disputed amounts may only be paid by agreement of the Liquidation Trust Supervisory Board, or pursuant to order of the Bankruptcy Court, which shall retain jurisdiction over all disputes regarding the Liquidation Trustee's and his or her professionals' compensation. All costs, expenses, and obligations, including filing fees, incurred by the Liquidation Trustee (or professionals who may be employed by the Liquidation Trustee in administering the Liquidation Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid from the applicable Liquidation Trust Assets prior to any distribution to the Liquidation Trust Beneficiaries (subject to the limitations set forth in this Agreement and the Plan). If the cash in the Liquidation Trust shall be insufficient to compensate and reimburse the Liquidation Trustee or the members of the Liquidation Trust Supervisory Board, as the case may be, for any amounts to which they are entitled hereunder, then the Liquidation Trustee is hereby authorized to reduce to cash that portion of the Liquidation Trust Assets that are causes of action necessary so as to effect such compensation and reimbursement, subject to the terms of the Plan.

8.8    <u>Periodic Reporting; Filing Requirements</u>.

8.8.1.    Beginning the first quarter-end following the Effective Date and continuing on each quarter-end thereafter until the Closing Date, within thirty (30) calendar days after the end of such period, the Liquidation Trust shall File quarterly reports with the Bankruptcy Court. Each

quarterly report shall contain a cash flow statement which shall show Distributions by Class during the prior quarter, an unaudited balance sheet, the terms of any settlement of an individual Claim in an amount greater than $100,000, the terms of any litigation settlement where the Cause of Action or the Liquidation Trust Action was greater than $100,000 or the settlement is for more than $100,000, the terms of any sale of Estate Assets where the proceeds of such sale are $100,000 or greater, and such other information as the Liquidation Trust determines is material.

8.8.2.   Until the effectiveness of an Exchange Act Registration for the Class A Liquidation Trust Interests, the Liquidation Trust shall, as soon as practicable after the end of each calendar year and upon termination of the Liquidation Trust, provide or make available a written report and account to the holders of Liquidation Trust Interests, which report and account sets forth (i) the assets and liabilities of the Liquidation Trust at the end of such calendar year or upon termination and the receipts and disbursements of the Liquidation Trust for such calendar year or period, and (ii) changes in the Liquidation Trust Assets and actions taken by the Liquidation Trustee in the performance of its duties under the Plan or the Liquidation Trust Agreement that the Liquidation Trustee determines in its discretion may be relevant to holders of Liquidation Trust Interests, such as material changes or actions that, in the opinion of the Liquidation Trustee, may have a material effect on the Liquidation Trust Assets that were not previously reported.  The Liquidation Trust may provide or make available to holders of Liquidation Trust Interests similar reports for such interim periods during the calendar year as the Liquidation Trustee deems advisable. So long as no Exchange Act Registration for the Class A Liquidation Trust Interests shall have become effective, such reports may be provided or made available to the holders of Liquidation Trust Interests, in the discretion of the Liquidation Trustee, by any reasonable means, including U.S. mail, electronic transmission, display on IntraLinks or a similar virtual data room to which holders shall have access, or publication to a publicly-available website or by press release distributed via a generally recognized business news service.

8.8.3.   Following the effectiveness of an Exchange Act Registration for the Class A Liquidation Trust Interests, the Liquidation Trust shall provide or make available to the holders of Liquidation Trust Interests, either by publication to a publicly-available website or by press release distributed via a generally recognized business news service, copies of all current reports on Form 8-K, quarterly reports on Form 10-Q, and annual reports on Form 10-K that may be required to be filed by the Liquidation Trust with the SEC under the Exchange Act, which copies are to be so provided or made available promptly after such filing.

8.8.4.   The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations.  The Liquidation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidation Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

8.8.5.   The tax returns filed by the Liquidation Trustee shall report all Liquidation Trust earnings for the taxable year being reported.

8.9    Confidentiality.  Except as required in the performance of his or her duties, the Liquidation Trustee shall, while serving as Liquidation Trustee under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to

any Person to which any of the Liquidation Trust Assets relate or of which he has become aware in his or her capacity as Liquidation Trustee.

## ARTICLE IX
## MAINTENANCE OF RECORDS

9.1    The Liquidation Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidation Trust Assets and an accounting of all receipts and disbursements.  Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court five (5) years after the final report to the Bankruptcy Court has been rendered by the Liquidation Trustee (unless such records and documents are necessary to fulfill the Liquidation Trustee's obligations pursuant to this Agreement). Notwithstanding the foregoing, during the term of the Liquidation Trust, the Liquidation Trustee may destroy business records transferred by Debtors to the Liquidation Trust thirty (30) days after delivery of written notice to the Liquidation Trust Supervisory Board of the Liquidation Trustee's intent to destroy such records, unless prior to the expiration of such 30-day period, the Liquidation Trust Supervisory Board shall have objected in writing to the destruction of such records.  The Liquidation Trustee may estimate and include, as part of the Liquidation Trustee's compensation, a reasonable sum to be used for the purposes of maintaining, accessing and destroying records during the term of the Liquidation Trust and for up to five (5) years thereafter.  The Liquidation Trust Supervisory Board shall have the right to inspect the books and records of the Liquidation Trust upon reasonable prior written notice to the Liquidation Trustee of such inspection.

## ARTICLE X
## DURATION OF LIQUIDATION TRUST

10.1    Duration.  This Agreement, the establishment of the Liquidation Trust and the transfer of Liquidation Trust Assets to the Liquidation Trust pursuant to Section 2.3 hereof shall be effective on the Effective Date immediately prior to the dissolution of the Debtors (other than the Remaining Debtors) under Section [5.2.3] of the Plan.  Thereupon, this Agreement shall remain and continue in full force and effect until the Liquidation Trust is terminated in accordance with the provisions of this Agreement and the Plan.

10.2    Termination of the Liquidation Trust.  The Liquidation Trustee and the Liquidation Trust shall be discharged or terminated, as the case may be, at such time as: (a) the Liquidation Trustee determines that the pursuit of additional Liquidation Trust Actions is not likely to yield sufficient additional proceeds to justify further pursuit of such Liquidation Trust Actions and (b) all distributions required to be made by the Liquidation Trustee to the holders of Allowed Claims and to the Liquidation Trust Beneficiaries under the Plan and this Agreement have been made, but in no event shall the Liquidation Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets.  The

01:23653290.2

Liquidation Trust may not be terminated at any time by the Liquidation Trust Beneficiaries. Upon termination of the Liquidation Trust, any remaining Liquidation Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Liquidation Trustee to the American Bankruptcy Institute Endowment Fund.

     10.3   <u>Continuance of Liquidation Trust for Winding Up</u>. After the termination of the Liquidation Trust and for the purpose of liquidation and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until his or her duties have been fully performed, including such post-distribution tasks as necessary to wind up the affairs of the Liquidation Trust. Subject to the provisions of Section 9.1 hereof, after the termination of the Liquidation Trust, the Liquidation Trustee shall retain or cause to be retained for a period of five (5) years the books, records, Liquidation Trust Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Liquidation Trustee. At the Liquidation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after five (5) years from the completion and winding up of the affairs of the Liquidation Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidation Trust and final distribution of the Liquidation Trust, the Liquidation Trustee shall have no further duties or obligations hereunder.

**ARTICLE XI**
**MISCELLANEOUS**

     11.1   <u>Preservation of Privilege</u>. In connection with the rights, claims, and causes of action that constitute Liquidation Trust Assets, any attorney-client privilege, work-product doctrine, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidation Trust pursuant to the terms of the Plan or otherwise shall vest in the Liquidation Trustee and his or her representatives, and the Liquidation Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary. The Liquidation Trustee's receipt of such privileges shall not operate as a waiver of any other privileges or immunities possessed or retained by the Debtors.

     11.2   <u>Notices</u>. Unless otherwise expressly provided herein, all notices to be given to Liquidation Trust Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Liquidation Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Liquidation Trust or the Liquidation Trust Supervisory Board, as applicable, shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery (if receipt is confirmed) addressed as follows:

     If to the Liquidation Trust:

          Liquidation Trustee
          Michael I. Goldberg
          Akerman, LLP
          350 East Las Olas Boulevard, Suite 1600
          Fort Lauderdale, FL  33301

With copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4003
Attn:   Richard M. Pachulski, Esq.

If to the Liquidation Trust Supervisory Board:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4003
Attn:   Richard M. Pachulski, Esq.

11.3    <u>No Bond</u>.  Notwithstanding any state law to the contrary, the Liquidation Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction, unless the Liquidation Trustee or the Liquidation Trust Supervisory Board decide in their reasonable judgment to obtain such bond or other security.  Subject to Section 8.7, the Liquidation Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including coverage with respect to the liabilities, duties and obligations of the Liquidation Trustee and its agents, representatives, employees or independent contractors under this Agreement and the Plan.  Subject to Section 8.7, the cost of any such insurance coverage shall be an expense of the Liquidation Trust and paid out of the Liquidation Trust Assets.

11.4    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

11.5    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6    <u>Headings</u>.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

11.7    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.8    <u>No Execution</u>.  All funds in the Liquidation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Liquidation Trust Beneficiary, and no Liquidation Trust Beneficiary or any other Person can execute upon, garnish or attach the Liquidation Trust Assets or the Liquidation Trust in any manner or compel payment from the Liquidation Trust except by Final Order of the Bankruptcy Court.  Payment will be solely governed by this Agreement and the Plan.

11.9    <u>Intention of Parties to Establish Grantor Liquidation Trust</u>.  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

01:23653290.2

11.10   <u>Amendment</u>.  This Agreement may be amended from time to time (a) by order of the Bankruptcy Court or (b) by a written instrument signed by the Liquidation Trustee; provided, that in the case of clause (b) above, (i) any such amendment shall require the prior written approval of a majority of the members of the Liquidation Trust Supervisory Board; and (ii) any such amendment that would adversely affect any Beneficiary in a manner disproportionate from the other Beneficiaries in their capacities as such shall require the consent of each such adversely and disproportionately affected Beneficiary.

11.11   <u>Severability</u>.  If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.12   <u>Counterparts and Facsimile Signatures</u>.  This Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

11.13   <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Supervisory Board, and the Liquidation Trust Assets, including the determination of all disputes arising out of or related to administration of the Liquidation Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Agreement or the administration of the Liquidation Trust.  The parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, then the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[*The remainder of this page is intentionally left blank.*]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**DEBTORS**:

| | |
|---|---|
| 215 North 12th Street, LLC | Craven Investments, LLC |
| 695 Buggy Circle, LLC | Crossbeam Investments, LLC |
| Addison Park Investments, LLC | Crowfield Investments, LLC |
| Anchorpoint Investments, LLC | Crystal Valley Holdings, LLC |
| Arborvitae Investments, LLC | Crystal Woods Investments, LLC |
| Archivolt Investments, LLC | Cuco Settlement, LLC |
| Arlington Ridge Investments, LLC | Daleville Investments, LLC |
| Arrowpoint Investments, LLC | Deerfield Park Investments, LLC |
| Baleroy Investments, LLC | Derbyshire Investments, LLC |
| Basswood Holding, LLC | Diamond Cove Investments, LLC |
| Bay Village Investments, LLC | Dixville Notch Investments, LLC |
| Bear Brook Investments, LLC | Dogwood Valley Investments, LLC |
| Beech Creek Investments, LLC | Dollis Brook Investments, LLC |
| Bellflower Funding, LLC | Donnington Investments, LLC |
| Bishop White Investments, LLC | Doubleleaf Investments, LLC |
| Black Bass Investments, LLC | Drawspan Investments, LLC |
| Black Locust Investments, LLC | Eldredge Investments, LLC |
| Blazingstar Funding, LLC | Elstar Investments, LLC |
| Bluff Point Investments, LLC | Emerald Lake Investments, LLC |
| Bowman Investments, LLC | Fieldpoint Investments, LLC |
| Bramley Investments, LLC | Franconia Notch Investments, LLC |
| Brise Soleil Investments, LLC | Frog Rock Investments, LLC |
| Broadsands Investments, LLC | Gateshead Investments, LLC |
| Brynderwen Investments, LLC | Glenn Rich Investments, LLC |
| Buggy Circle Holdings, LLC | Goose Rocks Investments, LLC |
| Cablestay Investments, LLC | Goosebrook Investments, LLC |
| Cannington Investments, LLC | Graeme Park Investments, LLC |
| Carbondale Doocy, LLC | Grand Midway Investments, LLC |
| Carbondale Glen Lot A-5, LLC | Gravenstein Investments, LLC |
| Carbondale Glen Lot D-22, LLC | Green Gables Investments, LLC |
| Carbondale Glen Lot E-24, LLC | Grenadier Investments, LLC |
| Carbondale Glen Lot GV-13, LLC | Grumblethorpe Investments, LLC |
| Carbondale Glen Lot L-2, LLC | H10 Deerfield Park Holding Company, LLC |
| Carbondale Glen Lot SD-14, LLC | H11 Silk City Holding Company, LLC |
| Carbondale Glen Lot SD-23, LLC | H12 White Birch Holding Company, LLC |
| Carbondale Glen Mesa Lot 19, LLC | H13 Bay Village Holding Company, LLC |
| Carbondale Glen River Mesa, LLC | H14 Dixville Notch Holding Company, LLC |
| Carbondale Glen Sundance Ponds, LLC | H15 Bear Brook Holding Company, LLC |
| Carbondale Glen Sweetgrass Vista, LLC | H16 Monadnock Holding Company, LLC |
| Carbondale Peaks Lot L-1, LLC | H17 Pemigewasset Holding Company, LLC |
| Carbondale Spruce 101, LLC | H18 Massabesic Holding Company, LLC |
| Carbondale Sundance Lot 15, LLC | H19 Emerald Lake Holding Company, LLC |
| Carbondale Sundance Lot 16, LLC | H2 Arlington Ridge Holding Company, LLC |
| Castle Pines Investments, LLC | |
| Centershot Investments, LLC | |
| Chaplin Investments, LLC | By: _____ |
| Chestnut Investments, LLC | Bradley D. Sharp, solely in his capacity as |
| Chestnut Ridge Investments, LLC | Chief Restructuring Officer |
| Clover Basin Investments, LLC | |
| Coffee Creek Investments, LLC | |

[SIGNATURE PAGE TO LIQUIDATION TRUST AGREEMENT]

H20 Bluff Point Holding Company, LLC
H21 Summerfree Holding Company, LLC
H22 Papirovka Holding Company, LLC
H23 Pinova Holding Company, LLC
H24 Stayman Holding Company, LLC
H25 Elstar Holding Company, LLC
H26 Gravenstein Holding Company, LLC
H27 Grenadier Holding Company, LLC
H28 Black Locust Holding Company, LLC
H29 Zestar Holding Company, LLC
H30 Silver Maple Holding Company, LLC
H31 Addison Park Holding Company, LLC
H32 Arborvitae Holding Company, LLC
H33 Hawthorn Holding Company, LLC
H35 Hornbeam Holding Company, LLC
H36 Sturmer Pippin Holding Company, LLC
H37 Idared Holding Company, LLC
H38 Mutsu Holding Company, LLC
H39 Haralson Holding Company, LLC
H4 Pawtuckaway Holding Company, LLC
H40 Bramley Holding Company, LLC
H41 Grumblethorpe Holding Company, LLC
H43 Lenni Heights Holding Company, LLC
H44 Green Gables Holding Company, LLC
H46 Beech Creek Holding Company, LLC
H47 Summit Cut Holding Company, LLC
H49 Bowman Holding Company, LLC
H5 Chestnut Ridge Holding Company, LLC
H50 Sachs Bridge Holding Company, LLC
H51 Old Carbon Holding Company, LLC
H52 Willow Grove Holding Company, LLC
H53 Black Bass Holding Company, LLC
H54 Seven Stars Holding Company, LLC
H55 Old Maitland Holding Company, LLC
H56 Craven Holding Company, LLC
H58 Baleroy Holding Company, LLC
H59 Rising Sun Holding Company, LLC
H6 Lilac Meadow Holding Company, LLC
H60 Moravian Holding Company, LLC
H61 Grand Midway Holding Company, LLC
H64 Pennhurst Holding Company, LLC
H65 Thornbury Farm Holding Company, LLC
H66 Heilbron Manor Holding Company, LLC
H68 Graeme Park Holding Company, LLC
H7 Dogwood Valley Holding Company, LLC
H70 Bishop White Holding Company, LLC
H74 Imperial Aly Holding Company, LLC
H76 Diamond Cove Holding Company, LLC
H8 Melody Lane Holding Company, LLC
H9 Strawberry Fields Holding Company, LLC
Hackmatack Investments, LLC
Haffenburg Investments, LLC
Haralson Investments, LLC
Harringworth Investments, LLC
Hawthorn Investments, LLC
Hazelpoint Investments, LLC

Heilbron Manor Investments, LLC
Hollyline Holdings, LLC
Hollyline Owners, LLC
Hornbeam Investments, LLC
Idared Investments, LLC
Imperial Aly Investments, LLC
Ironsides Investments, LLC
Kirkstead Investments, LLC
Lenni Heights Investments, LLC
Lilac Meadow Investments, LLC
Lilac Valley Investments, LLC
Lincolnshire Investments, LLC
Lonetree Investments, LLC
Longbourn Investments, LLC
M10 Gateshead Holding Company, LLC
M11 Anchorpoint Holding Company, LLC
M13 Cablestay Holding Company, LLC
M14 Crossbeam Holding Company, LLC
M15 Doubleleaf Holding Company, LLC
M16 Kirkstead Holding Company, LLC
M17 Lincolnshire Holding Company, LLC
M19 Arrowpoint Holding Company, LLC
M22 Drawspan Holding Company, LLC
M24 Fieldpoint Holding Company, LLC
M25 Centershot Holding Company, LLC
M26 Archivolt Holding Company, LLC
M27 Brise Soleil Holding Company, LLC
M28 Broadsands Holding Company, LLC
M29 Brynderwen Holding Company, LLC
M31 Cannington Holding Company, LLC
M32 Dollis Brook Holding Company, LLC
M33 Harringworth Holding Company, LLC
M34 Quarterpost Holding Company, LLC
M36 Springline Holding Company, LLC
M37 Topchord Holding Company, LLC
M38 Pemberley Holding Company, LLC
M39 Derbyshire Holding Company, LLC
M40 Longbourn Holding Company, LLC
M41 Silverthorne Holding Company, LLC
M43 White Dome Holding Company, LLC
M44 Wildernest Holding Company, LLC
M45 Clover Basin Holding Company, LLC
M46 Owl Ridge Holding Company, LLC
M48 Vallecito Holding Company, LLC
M49 Squaretop Holding Company, LLC
M5 Stepstone Holding Company, LLC
M50 Wetterhorn Holding Company, LLC
M51 Coffee Creek Holding Company, LLC
M53 Castle Pines Holding Company, LLC
M54 Lonetree Holding Company, LLC


By: _____
Bradley D. Sharp, solely in his capacity as
Chief Restructuring Officer

[SIGNATURE PAGE TO LIQUIDATION TRUST AGREEMENT]

M56 Haffenburg Holding Company, LLC
M57 Ridgecrest Holding Company, LLC
M58 Springvale Holding Company, LLC
M60 Thunder Basin Holding Company, LLC
M61 Mineola Holding Company, LLC
M62 Sagebrook Holding Company, LLC
M63 Crowfield Holding Company, LLC
M67 Mountain Spring Holding Company, LLC
M68 Goosebrook Holding Company, LLC
M70 Pinney Holding Company, LLC
M71 Eldredge Holding Company, LLC
M72 Daleville Holding Company, LLC
M73 Mason Run Holding Company, LLC
M74 Varga Holding Company, LLC
M75 Riley Creek Holding Company, LLC
M76 Chaplin Holding Company, LLC
M77 Frog Rock Holding Company, LLC
M79 Chestnut Company, LLC
M80 Hazelpoint Holding Company, LLC
M83 Mt. Holly Holding Company, LLC
M85 Glenn Rich Holding Company, LLC
M86 Steele Hill Holding Company, LLC
M87 Hackmatack Hills Holding Company, LLC
M88 Franconia Notch Holding Company, LLC
M89 Mount Washington Holding Company, LLC
M9 Donnington Holding Company, LLC
M90 Merrimack Valley Holding Company, LLC
M91 Newville Holding Company, LLC
M92 Crystal Woods Holding Company, LLC
M93 Goose Rocks Holding Company, LLC
M94 Winding Road Holding Company, LLC
M95 Pepperwood Holding Company, LLC
M96 Lilac Valley Holding Company, LLC
M97 Red Woods Holding Company, LLC
M99 Ironsides Holding Company, LLC
Mason Run Investments, LLC
Massabesic Investments, LLC
Melody Lane Investments, LLC
Merrimack Valley Investments, LLC
Mineola Investments, LLC
Monadnock Investments, LLC
Moravian Investments, LLC
Mount Washington Investments, LLC
Mountain Spring Investments, LLC
Mt. Holly Investments, LLC
Mutsu Investments, LLC
Newville Investments, LLC
Old Carbon Investments, LLC
Old Maitland Investments, LLC
Owl Ridge Investments, LLC
Papirovka Investments, LLC
Pawtuckaway Investments, LLC
Pemberley Investments, LLC
Pemigewasset Investments, LLC
Pennhurst Investments, LLC
Pepperwood Investments, LLC

Pinney Investments, LLC
Pinova Investments, LLC
Quarterpost Investments, LLC
Red Woods Investments, LLC
Ridgecrest Investments, LLC
Riley Creek Investments, LLC
Rising Sun Investments, LLC
Sachs Bridge Investments, LLC
Sagebrook Investments, LLC
Seven Stars Investments, LLC
Silk City Investments, LLC
Silver Maple Investments, LLC
Silverleaf Funding, LLC
Silverthorne Investments, LLC
Springline Investments, LLC
Springvale Investments, LLC
Squaretop Investments, LLC
Stayman Investments, LLC
Steele Hill Investments, LLC
Stepstone Investments, LLC
Strawberry Fields Investments, LLC
Sturmer Pippin Investments, LLC
Summerfree Investments, LLC
Summit Cut Investments, LLC
Thornbury Farm Investments, LLC
Thunder Basin Investments, LLC
Topchord Investments, LLC
Vallecito Investments, LLC
Varga Investments, LLC
Wall 123, LLC
Wetterhorn Investments, LLC
White Birch Investments, LLC
White Dome Investments, LLC
Whiteacre Funding, LLC
Wildernest Investments, LLC
Willow Grove Investments, LLC
Winding Road Investments, LLC
WMF Management, LLC
Woodbridge Capital Investments, LLC
Woodbridge Commercial Bridge Loan Fund 1, LLC
Woodbridge Commercial Bridge Loan Fund 2, LLC
Woodbridge Group of Companies, LLC
Woodbridge Investments, LLC
Woodbridge Mezzanine Fund 1, LLC
Woodbridge Mortgage Investment Fund 1, LLC
Woodbridge Mortgage Investment Fund 2, LLC
Woodbridge Mortgage Investment Fund 3, LLC
Woodbridge Mortgage Investment Fund 3A, LLC
Woodbridge Mortgage Investment Fund 4, LLC
Woodbridge Structured Funding, LLC
Zestar Investments, LLC


By: _____
Bradley D. Sharp, solely in his capacity as
Chief Restructuring Officer

[SIGNATURE PAGE TO LIQUIDATION TRUST AGREEMENT]

**LIQUIDATION TRUSTEE**:

By: _____

Michael Goldberg, solely in his capacity as
Liquidation Trustee under this Agreement

01:23653290.2

## **Schedule A**

The Liquidation Trustee will receive (i) base compensation at an hourly rate of $550 per hour for 2018, with 10% rate raises commencing at the beginning of calendar years 2019 and 2020; and (ii) incentive compensation as determined by the Liquidation Trust Supervisory Board.

01:23653290.2

Case 17-12560-BLS   Doc 2857   Filed 09/24/18   Page 1 of 19

## **EXHIBIT B**

Schedule of Assumed Agreements

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| 14140 Investments | 16217 Kittridge St., Van Nuys, CA 91406 | Woodbridge Group of Companies | Office Lease for headquarters located 14140 Ventura Blvd., Ste. 302, Sherman Oaks, CA 91423 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Ridgecrest Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Pinova Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Merrimack Valley Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Mt. Holly Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Crystal Woods Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Thunder Basin Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Dixville Notch Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Melody Lane Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Carbondale Glen Lot E-24, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Haralson Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Pemigewasset Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Monadnock Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Castle Pines Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Daleville Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Green Gables Investments, LLC | Liability Insurance, Policy No. 103 GL 0020695 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Green Gables Investments, LLC | Liability Insurance, Policy No. AR3462124 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Arborvitae Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Old Carbon Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Papirovka Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Grumblethorpe Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Bramley Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Coffee Creek Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Dogwood Valley Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Black Locust Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Bowman Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Carbondale Glen Mesa Lot 19, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Stayman Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Bear Brook Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Strawberry Fields Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Grenadier Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Franconia Notch Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| A. Logan Insurance Brokerage | 260 West 36th St. 3rd Floor New York, NY 10018 | Lonetree Investments, LLC | Vacant Land Liability Insurance, Policy No. AES105233601 | $0.00 |
| Allstate (Kirk Farrel Agency) | 7288 W Sunset Blvd. Ste. 205 Los Angeles CA 90046 | Brynderwen Investments LLC | Office Policy Insurance, Policy No. 92C3A3549 | $0.00 |
| Alternative Energy Systems | 3235 N. Verdugo Rd., Glendale, CA 91208 | Addison Park Invesments, LLC | Title 24 Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Amazon Inc. | 410 Terry Ave. North, Seattle, WA 98109 | Woodbridge Group of Companies | Data Backup Storage Agreement | $0.00 |
| Ames Peterson International | 190 N. Canon Dr. Ste. 313, Beverly Hills, CA 90210 | Gravenstein Investments, LLC | Architecture Services Agreement for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Ames Peterson International | 190 N. Canon Dr. Ste. 313, Beverly Hills, CA 90210 | Gravenstein Investments, LLC | Additional Work Order to Architecture Services Agreement for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Aquatic Design and Construction | 23047 Ventura Blvd. Ste. 105, Woodland Hills, CA 91364 | Winding Road Investments, LLC | Swimming Pool Design Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Aquatic Design and Construction | 23047 Ventura Blvd. Ste. 105, Woodland Hills, CA 91364 | Elstar Investments, LLC | Swimming Pool Design Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Associated Utility Services | 1691 Los Angeles Ave., Saticoy, CA 93004 | Squaretop Investments, LLC | Utility Consultant Services Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $1,080.00 |
| AsureForce Asure HCM (aka Mangrove Payroll Services) | 1501 South Church Avenue, Tampa, FL  33629 | Woodbridge Group of Companies | Contract Pricing Agreement (Payroll & HRIS) for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| AsureForce Asure HCM (aka Mangrove Payroll Services) | 1501 South Church Avenue, Tampa, FL  33629 | Woodbridge Group of Companies | Limited Use Software Agreement (Payroll & HRIS)  for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| Bay Alarm Company | 1728 Standard Avenue, Glendale, CA 91201 | Woodbridge Group of Companies | Alarm Monitoring Services Agreement  for 8124 W 3rd St., Los Angeles, CA 90048 | $0.00 |
| Boswell Construction | 17071 Ventura Blvd. Ste. 201, Encino, CA 91316 | Chestnut  Investments, LLC | General Contractor Agreeement for 10733 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Builders Team, Inc. | 8949 Sunset Blvd. #201, West Hollywood, CA 90069 | Winding Road Investments, LLC | General Contractor Agreeement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Builders Team, Inc. | 8949 Sunset Blvd. #201, West Hollywood, CA 90069 | Riley Creek Investments, LLC | General Contractor Agreeement for 711 Walden Dr., Beverly Hills, CA 90210 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Builders Team, Inc. | 8949 Sunset Blvd. #201, West Hollywood, CA 90069 | Squaretop Investments, LLC | Change Order to General Contractor Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Builders Team, Inc. | 8949 Sunset Blvd. #201, West Hollywood, CA 90069 | Squaretop Investments, LLC | General Contractor Agreeement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Bulli Corporation | 1100 Wilshire Blvd. #3705, Los Angeles, CA 90017 | Addison Park Invesments, LLC | Architecture Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Buratti & Associates, Inc. | 6345 Balboa Blvd. #259, Encino, CA 91316 | Wonderview Investments, LLC | Electrical Engineering Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Buratti & Associates, Inc. | 6345 Balboa Blvd. #259, Encino, CA 91316 | Arlington Ridge Investments, LLC | Mechanical Engineering Agreement - Sewer Ejection Design for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Buratti & Associates, Inc. | 6345 Balboa Blvd. #259, Encino, CA 91316 | Hornbeam Investments, LLC | Mechanical, Electrical and Plumbing Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Buratti & Associates, Inc. | 6345 Balboa Blvd. #259, Encino, CA 91316 | Hornbeam Investments, LLC | Additional Work Order to Mechanical, Electrical and Plumbing Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Buratti & Associates, Inc. | 6345 Balboa Blvd. #259, Encino, CA 91316 | Elstar Investments, LLC | Mechanical, Electrical and Plumbing Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Byer Geotechnical, Inc. | 1461 E. Chevy Chase Dr. #200, Glendale, CA 91206 | Winding Road Investments, LLC | Geotechnical Engineering Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $800.00 |
| Byer Geotechnical, Inc. | 1461 E. Chevy Chase Dr. #200, Glendale, CA 91206 | Addison Park Invesments, LLC | Geotechnical Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| CM Peck | 25 El. Molino Ave., Pasadena, CA 91101 | Bay Village Investments, LLC | Civil Engineering Services Agreement  for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Corodata Records Management, Inc. | 2621 Research Dr., Corona, CA 92882 | Woodbridge Group of Companies | Document Storage Agreement for historical records | $0.00 |
| Coscia Day Architecture and Design | 745/747 Indiana Ave., Venice, CA 90291 | Chestnut Ridge Investments, LLC | Architecture Services Agreement for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| Creative Art Partners (CAP) | 1216 N. La Cienega Blvd., Unit A#1, West Hollywood, CA 90069 | Cannington Investments, LLC | Fine Art Staging Services Agreement for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |
| Crest Real Estate | 11150 W. Olympic Blvd. #700, Los Angeles, CA 90064 | Diamond Cove Investments, LLC | Permit Expediting Services Agreement for 1 Electra Ct., Los Angeles, CA 90046 | $0.00 |
| Crest Real Estate | 11150 W. Olympic Blvd. #700, Los Angeles, CA 90064 | Summit Cut Investments, LLC | Permit Expediting Services Agreement for 375 Trousdale Pl. Beverly Hills, CA 90210 | $0.00 |
| Crest Real Estate | 11150 W. Olympic Blvd. #700, Los Angeles, CA 90064 | Summit Cut Investments, LLC | Permit Expediting Services Agreement for 385 Trousdale Pl., Beverly Hills, CA 90210 | $3,315.90 |
| Crest Real Estate | 11150 W. Olympic Blvd. #700, Los Angeles, CA 90064 | Graeme Park Investments, LLC | Permit Expediting Services Agreement for 1001 Hanover Dr., Los Angeles, CA | $0.00 |
| Crest Real Estate | 11150 W. Olympic Blvd. #700, Los Angeles, CA 90064 | Elstar Investments, LLC | Permit Expediting Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Crest Real Estate | 11150 W. Olympic Blvd. #700, Los Angeles, CA 90064 | Heilbron Manor Investments, LLC | Permit Expediting Services Agreement for 2492 Mandeville Cyn. Rd., Los Angeles, CA 90049 | $0.00 |
| Crimson IT | 633 West 5th Street, Suite 810, Los Angeles, CA 90071 | Woodbridge Group of Companies | IT Services Agreement for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| Dane Coyle Custom Homes, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | Cablestay Investments, LLC | General Contractor Agreeement for 24025 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Dane Coyle Custom Homes, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | Gravenstein Investments, LLC | General Contractor Agreement for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Dane Coyle Custom Homes, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | Silk City Investments, LLC | General Contractor Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Dane Coyle Custom Homes, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | White Birch Investments, LLC | General Contractor Agreement for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Darryl Murray Inc. | 693 McCloud Ave., Thousand Oaks, CA 91360 | Silk City Investments, LLC | Mechanical Engineering Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Darryl Murray Inc. | 693 McCloud Ave., Thousand Oaks, CA 91360 | White Birch Investments, LLC | Mechanical Engineering Agreement for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| David Laforga Landscape Architecture | 956 Third Ave., Los Angeles, CA 90019 | Pawtuckaway Investments, LLC | Landscape Architectural Services Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| Dobkin Construction, Inc. | 5041 W. Pico Blvd., Los Angeles, CA 90019 | Lilac Meadow Investments, LLC | General Contractor Agreeement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| Dobkin Construction, Inc. | 5041 W. Pico Blvd., Los Angeles, CA 90019 | Lilac Meadow Investments, LLC | Amendment to General Contractor Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| DRS Engineering, Inc. | 1024 Pico Blvd. Ste.. 5, Santa Monica, CA 90405 | Addison Park Invesments, LLC | Structural Engineering Services Agreement - Retaining Walls for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Earth Systems | 1731 A Walter St., Ventura, CA 93003 | Silk City Investments, LLC | Geological Services Agreement - Phases II-III for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Earth Systems | 1731 A Walter St., Ventura, CA 93003 | White Birch Investments, LLC | Geological Services Agreement - Phases II-III for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Ecocentrix, Inc. | 1223 Wilshire Blvd. #874, Santa Monica, CA 90403 | Varga Investments, LLC | Landscape Architectural Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| Efax | 6922 Hollywood Boulevard, Los Angeles, CA | Woodbridge Group of Companies | Express Mail Agreement for corporate headquaters located at 14140 Ventura Blvd. Ste. 302, Sherman Oaks, CA | $0.00 |
| Enco Structural Builders, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | Gravenstein Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Enco Structural Builders, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | Silk City Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Enco Structural Builders, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | Silk City Investments, LLC | Structural Engineering Services Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Enco Structural Builders, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | White Birch Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Enco Structural Builders, Inc. | 23945 Calabasas Rd. Ste. 101, Calabasas, CA 91302 | White Birch Investments, LLC | Structural Engineering Services Agreement for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Federal Express Corporation | 3680 Hacks Cross Rd. Bldg. H, 2nd Floor, Memphis, TN  38125 | Woodbridge Group of Companies | Express Mail Agreement for corporate headquaters located at 14140 Ventura Blvd. Ste. 302, Sherman Oaks, CA | $27,062.62 |
| Fiore Landscape Design | 13323 Washington Blvd. Ste. 204, Los Angeles, CA 90066 | Winding Road Investments, LLC | Landscape Architectural Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Fiore Landscape Design | 13323 Washington Blvd. Ste. 204, Los Angeles, CA 90066 | Bay Village Investments, LLC | Landscape Architectural Services Agreement  for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Fiore Landscape Design | 13323 Washington Blvd. Ste. 204, Los Angeles, CA 90066 | Elstar Investments, LLC | Landscape Architectural Services Agreement  for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Fiore Landscape Design | 13323 Washington Blvd. Ste. 204, Los Angeles, CA 90066 | Lilac Meadow Investments, LLC | Landscape Architectural Services Agreement  for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| Florida Blue (aka Blue Cross Blue Shield) | 4800 Deerwood Campus Parkway, Jacksonville, FL 32246 | Woodbridge Group of Companies | EE Medical & Dental Insurance for employees | $0.00 |
| Forma | 10814 Reseda Blvd., Northridge, CA 91326 | Varga Investments, LLC | Civil Engineering Services Agreement   for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| FP Mailing Solutions | 140 N. Mitchell Ct. Ste. 200, Addision IL 60101 | Woodbridge Group of Companies | Postage Lease  for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| Fresh Air Environmental Services | 10675 Rush St., South El Monte, CA 91733 | Lilac Meadow Investments, LLC | Asbestos Abatement Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| G3 Construction | 8020 Floral Ave., Los Angeles, CA 90046 | Varga Investments, LLC | General Contractor Agreement (Phase III) for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| G3 Construction | 8020 Floral Ave., Los Angeles, CA 90046 | Addison Park Invesments, LLC | General Contractor Agreeement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| G3 Construction | 8020 Floral Ave., Los Angeles, CA 90046 | Arlington Ridge Investments, LLC | General Contractor Agreeement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| G3 Construction | 8020 Floral Ave., Los Angeles, CA 90046 | Varga Investments, LLC | General Contractor Services Agreeement for Shoring Services for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| G3 Construction | 8020 Floral Ave., Los Angeles, CA 90046 | Varga Investments, LLC | General Contractor Agreement (Phase II) for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| G3 Construction | 8020 Floral Ave., Los Angeles, CA 90046 | Goose Rocks Investments, LLC | General Contractor Agreeement for 9127 Thrasher Ave., Los Angeles, CA 90069 | $0.00 |
| GFS Construction | 12011 Albers St., Valley Village, CA 91607 | Pemberley Investments, LLC | General Contractor Agreeement for 2362 Apollo Dr., Los Angeles, CA 90046 | $0.00 |
| GFS Construction | 12011 Albers St., Valley Village, CA 91607 | Drawspan Investments, LLC | General Contractor Agreeement for 3843 Hayvenhurst, Encino, CA 91436 | $0.00 |
| GFS Construction | 12011 Albers St., Valley Village, CA 91607 | Woodbridge Group of Companies | General Contractor Agreeement for 8124 W 3rd St. Los Angeles, CA 90048 | $0.00 |
| H2O | 1831 Whitley #6, Hollywood, CA 90028 | Addison Park Invesments, LLC | Swimming Pool Design Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Hirsch/Green | 13333 Ventura Blvd. Ste. 204, Sherman Oaks, CA 91423 | Lilac Meadow Investments, LLC | Traffic Control Plan Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Deerfield Park Investments, LLC | General Contractor Agreeement for 1001 Hanover Dr., Los Angeles, CA | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Chestnut Ridge Investments, LLC | Change Order to General Contractor Agreement for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Chestnut Ridge Investments, LLC | Change Order to General Contractor Agreement for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Chestnut Ridge Investments, LLC | General Contractor Agreeement for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Cannington Investments, LLC | General Contractor Agreeement for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Goosebrook Investments, LLC | General Contractor Agreeement for 2600 Hutton Dr., Beverly Hills, CA 90210 | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Longbourn Investments, LLC | General Contractor Agreeement for 9040 Alto Cedro Dr., Beverly Hills, CA 90210 | $0.00 |
| HMDG Inc. | 4154 Pico Blvd., Los Angeles, CA 90019 | Crowfield Investments, LLC | General Contractor Agreeement for 1241 Loma Vista Dr., Beverly Hills, CA 90210 | $0.00 |
| Holdenwater | PO Box 7080 Fullerton, CA 92834 | Elstar Investments, LLC | Swimming Pool Structural Engineering Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Hutchinson and Bloodgood Consulting Group | 550 North Brand Blvd. 14th Fl., Glendale, CA 91203 | Woodbridge Group of Companies | Accounting Software Agreement | $0.00 |
| I-Business Network (I-BN) | 2617 Sandy Plains Rd., Ste. B, Marietta, GA 30066 | Woodbridge Group of Companies | Sage Hosting Contract for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| I-Grace | 1964 Westwood Blvd. #425, Los Angeles, CA 90025 | Hornbeam Investments, LLC | General Contractor Agreeement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| I-Grace | 1964 Westwood Blvd. #425, Los Angeles, CA 90025 | Elstar Investments, LLC | General Contractor Agreeement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Incompli, Inc. | 23441 South Pointe Dr., Ste. 190, Laguna Hills, CA 92653 | Addison Park Invesments, LLC | Stormwater Plan Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Incompli, Inc. | 23441 South Pointe Dr., Ste. 190, Laguna Hills, CA 92653 | Addison Park Invesments, LLC | Stormwater Plan Services Agreement - Inspections for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Irvine Geotechnical, Inc. | 145 N. Sierra Madre Blvd. Ste. #12, Pasadena, CA 91107 | Arlington Ridge Investments, LLC | Geotechnical Services Agreement - Observation for 1357 Laurel Way, Beverly Hills, CA 90210 | $300.00 |
| Irvine Geotechnical, Inc. | 145 N. Sierra Madre Blvd. Ste. #12, Pasadena, CA 91107 | Arlington Ridge Investments, LLC | Additional Work Order to Geotechnical Services Agreeement for 1357 Laurel Way, Beverly Hills, CA 90210 | $200.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Winding Road Investments, LLC | Waterproofing Consultant Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Chestnut Investments, LLC | Waterproofing Consultant Services Agreement for 10733 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Arlington Ridge Investments, LLC | Waterproofing Consultant Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Bay Village Investments, LLC | Waterproofing Consultant Services Agreement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Pawtuckaway Investments, LLC | Waterproofing Consultant Services Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Hornbeam Investments, LLC | Waterproofing Consultant Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Elstar Investments, LLC | Waterproofing Consultant Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Squaretop Investments, LLC | Waterproofing Consultant Services Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Varga Investments, LLC | Waterproofing Consultant Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Addison Park Invesments, LLC | Waterproofing Consultant Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| James West | 1742 Grand Ave., #6, Long Beach, CA 90804 | Lilac Meadow Investments, LLC | Waterproofing Consultant Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Elstar Investments, LLC | Additional Work Order to Shoring Design Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $1,720.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Elstar Investments, LLC | Structural Engineering Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $1,720.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Chestnut Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 10733 Stradella Ct., Los Angeles, CA 90077 | $2,840.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Winding Road Investments, LLC | Civil Engineering Services Agreement  for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Hornbeam Investments, LLC | Structural Engineering Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Chestnut Investments, LLC | Structural Engineering Services Agreement for 10733 Stradella Ct., Los Angeles, CA 90077 | $900.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Elstar Investments, LLC | Shoring Design Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Lilac Meadow Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Hornbeam Investments, LLC | Shoring Design Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Addison Park Invesments, LLC | Structural Engineering Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Winding Road Investments, LLC | Structural Engineering Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Chestnut Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 10733 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Pawtuckaway Investments, LLC | Structural Engineering Services Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Hornbeam Investments, LLC | Civil Engineering Services Agreement  for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Hornbeam Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Hornbeam Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Elstar Investments, LLC | Additional Work Order to Civil Engineering Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Elstar Investments, LLC | Civil Engineering Services Agreement  for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Elstar Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Varga Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Varga Investments, LLC | Structural Engineering Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Addison Park Invesments, LLC | Additional Work Order to Structural Engineering Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Addison Park Invesments, LLC | Additional Work Order to Structural Engineering Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| JLA (John Labib + Associates) | 319 Main St., El Segundo, CA 90245 | Addison Park Invesments, LLC | Structural Engineering Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Joe Engineering | 20909 Tulsa St., Chatsworth, CA 91311 | Silk City Investments, LLC | Additional Work Order to Civil Engineering Services Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Joe Engineering | 20909 Tulsa St., Chatsworth, CA 91311 | Silk City Investments, LLC | Civil Engineering Services Agreement  for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Joe Engineering | 20909 Tulsa St., Chatsworth, CA 91311 | White Birch Investments, LLC | Additional Work Order to Civil Engineering Services Agreement for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Joe Engineering | 20909 Tulsa St., Chatsworth, CA 91311 | White Birch Investments, LLC | Civil Engineering Services Agreement  for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| John D Bell Agency | 350 Highway 133, Suite 1, Carbondale, CO 81623 | Carbondale Glen River Mesa, LLC | Commercial Insurance, Policy No. 05-XQ8010-01 | $0.00 |
| John D Bell Agency | 350 Highway 133, Suite 1, Carbondale, CO 81623 | Zestar Investments, LLC | Builders Risk Insurance, Policy No. Pending | $0.00 |
| John D Bell Agency | 350 Highway 133, Suite 1, Carbondale, CO 81623 | Summerfree Investments, LLC | Builders Risk Insurance, Policy No. ER10644336 | $0.00 |
| JSN | 1287 N. Crescent Heights Blvd., Ste. PH-D, West Hollywood, CA 90046 | Cannington Investments, LLC | Interior Design Services Agreement  for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |
| JSN | 1287 N. Crescent Heights Blvd., Ste. PH-D, West Hollywood, CA 90046 | Cannington Investments, LLC | Staging Services Agreement  for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Diamond Cove Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. HGB0130053 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Diamond Cove Investments LLC | Earthquake Insurance, Policy No. VSEQ330775 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Graeme Park Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. HGB0129154 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Graeme Park Investments, LLC | Earthquake Insurance, Policy No. VSEQ318595 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Winding Road Investments, LLC | Builders Risk Insurance (Step Up), Policy No. HGB0127814 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Chestnut Investments, LLC | Build Renovation Insurance, Policy No. HGB0129713 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Chestnut Investments, LLC | Earthquake Insurance, Policy No. SSE83346 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Chestnut Ridge Investments, LLC | Build Renovation Insurance, Policy No. HGB0130163 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Crowfield Investments, LLC | Builders Risk Insurance, Policy No. HGB0129885 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Crowfield Investments, LLC | Earthquake Insurance, Policy No. VSEQ330492 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Sagebrook Investments, LLC | Comprehensive Personal Liability, Policy No. ATR/R/376005.02 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Sagebrook Investments, LLC | Earthquake Insurance, Policy No. VSEQ330795 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Rising Sun Investments, LLC | Comprehensive Personal Liability, Policy No. ATR/R/439999.01 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Rising Sun Investments, LLC | Earthquake Insurance, Policy No. VSEQ330781 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Rising Sun Investments, LLC | Comprehensive Personal Liability, Policy No. ATR/R/440000.01 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Rising Sun Investments, LLC | Earthquake Insurance, Policy No. VSEQ330782 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Arlington Ridge Investments, LLC | Earthquake Insurance, Policy No. AB8156717 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Arlington Ridge Investment, LLC | Builders Risk Insurance, Policy No. HGB0125163 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Sturmer Pippin Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. HGB0130077 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Sturmer Pippin Investments, LLC | Earthquake Insurance, Policy No. VSEQ311175 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Bay Village Investments, LLC | Builders Risk Insurance, Policy No. ER10822049 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Bay Village Investment, LLC | Comprehensive Personal Liability Insurance, Policy No. PH213700 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Pawtuckaway Investments, LLC | Builders Risk Insurance, Policy No. HGB0130645 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Pawtuckaway Investments, LLC | Earthquake Insurance, Policy No. SSE84616-00 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Hornbeam Investments, LLC | Builders Risk Insurance, Policy No. ER10874495 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Hornbeam Investments, LLC | Builders Risk Insurance, Policy No. PH215085 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Elstar Investments, LLC | Builders Risk Insurance, Policy No. ER10961177 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Elstar Investments, LLC | Vacant Land Liability Insurance, Policy No. PH214846 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Mason Run Investments, LLC | Vacant Dwelling Insurance, Policy No. HGB0128865 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Mason Run Investments, LLC | Earthquake Insurance, Policy No. VSEQ308727 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Squaretop Investments, LLC | Builders Risk Insurance, Policy No. HGB0128250 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Squaretop Investments, LLC | Earthquake Insurance, Policy No. SSE83170-00 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Gravenstein Investments, LLC | Builders Risk Insurance, Policy No. HGB0129709 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Gravenstein Investments, LLC | Earthquake Insurance, Policy No. SSE84015-00 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Heilbron Manor Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. HGB0128866 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Heilbron Manor Investments LLC | Earthquake Insurance, Policy No. VSEQ330767 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Silk City Investments, LLC | Builders Risk Insurance, Policy No. ER10799478 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Silk City Investments, LLC | Earthquake Insurance, Policy No. VSEQ330497 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | White Birch Investments, LLC | Builders Risk Insurance, Policy No. HGB0128076 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | White Birch Investments, LLC | Earthquake Insurance, Policy No. VSEQ329528 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Goosebrook Investments, LLC | Builders Risk Insurance, Policy No. HGB0128081 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Goosebrook Investments LLC | Earthquake Insurance, Policy No. SSE85353 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Summit Cut Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. HGB0127095 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Summit Cut Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. HGB0130533 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Summit Cut Investments, LLC | Earthquake Insurance, Policy No. VSEQ330772 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Hollyline Owners, LLC | Comprehensive Personal Liability Insurance, Policy No. PPL00000677-02 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Emerald Lake Investments LLC | Earthquake Insurance, Policy No. VSEQ313954 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Doubleleaf Investments, LLC | Comprehensive Personal Liability, Policy No. ATR/R/35412706 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Varga Investments, LLC | Earthquake Insurance (Step up Policy), Policy No. AB8156817 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Varga Investments, LLC | Builders Risk Insurance (Step Up), Policy No. HGB0129247 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Addison Park Investments, LLC | Builders Risk Insurance (Step Up), Policy No. HGB0129287 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Thornbury Farm Investments, LLC | Comprehensive Personal Liability Insurance, Policy No. PH215061 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Rising Sun Investments, LLC | Comprehensive Personal Liability, Policy No. ATR/R/440001.01 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Rising Sun Investments, LLC | Earthquake Insurance, Policy No. VSEQ330783 | $0.00 |
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Lilac Meadow Investments, LLC | Builders Risk Insurance (Step Up), Policy No. HGB0130794 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| KAR Insurance Agency | 28310 Roadside Dr. Suite 133, Agoura Hills, CA 91301 | Lilac Meadow Investments, LLC | Personal liability Insurance, Policy No. PPL00004699-00 | $0.00 |
| Karetz Engineering, Inc. | 2906 Jolley Dr., Burbank, CA 91504 | Squaretop Investments, LLC | Civil Engineering Services Agreement - Sump Pump Design for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Kimberlina Whettam & Associates | 22845 Ventura Blvd., #521, Woodland Hills, CA 91364 | Addison Park Invesments, LLC | Permit Expediting Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| LaserCare | 3375 Robertson Pl., Los Angeles, CA 90034 | Woodbridge Group of Companies | Printer Lease for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| LC Engineering Group, Inc. | 889 Pierce Ct. Ste. #101, Thousand Oaks, CA 91360 | Arlington Ridge Investments, LLC | Civil Engineering Services Agreement - Sump Pump Design for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Liberty Mutual | 260 West 36th St. 3rd Floor New York, NY 10018 | Green Gables Investments, LLC | Builders Risk Insurance, Policy No. BMO 18 58 37 61 63 | $0.00 |
| Lighting Design Alliance, Inc. | 2830 Temple Ave., Long Beach, CA 90806 | Varga Investments, LLC | Lighting Design Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| McClean Design | 190 S. Glassell St. #203, Orange, CA 92866 | Arlington Ridge Investments, LLC | Architecture Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| McClean Design | 190 S. Glassell St. #203, Orange, CA 92866 | Bay Village Investments, LLC | Architecture Services Agreement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Microsoft Corporation | One Microsoft Way, Redmond, WA 98052 | Woodbridge Group of Companies | Outlook/Email Storage/Office for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| My Fax | 6922 Hollywood Blvd., 5th Fl., Los Angeles, CA 90028 | Woodbridge Group of Companies | Facsimile Agreement for Florida office | $0.00 |
| Oh's Design and Development | 500 Shatto Pl. #411, Los Angeles, CA 90020 | Bay Village Investments, LLC | General Contractor Agreeement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Oh's Design and Development | 500 Shatto Pl. #411, Los Angeles, CA 90020 | Pawtuckaway Investments, LLC | General Contractor Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| Pacific Crest | 23622 Calabasas Rd. #100, Calabasas, CA 91302 | Sturmer Pippin Investments, LLC | Permit Expediting Services Agreement for 141 S. Carolwood Dr., Holmby Hills, CA 90024 | $0.00 |
| Pacific Crest | 23622 Calabasas Rd. #100, Calabasas, CA 91302 | Grand Midway Investments, LLC | Permit Expediting Services Agreement for 800 Stradella Rd., Los Angeles, CA 90077 | $0.00 |
| Parker Resnick | 1927 Pontius Ave., Los Angeles, CA 90025 | Arlington Ridge Investments, LLC | Additional Work Order to Structural Engineering Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Parker Resnick | 1927 Pontius Ave., Los Angeles, CA 90025 | Arlington Ridge Investments, LLC | Structural Engineering Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Parker Resnick | 1927 Pontius Ave., Los Angeles, CA 90025 | Bay Village Investments, LLC | Structural Engineering Services Agreement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| PCH Storey Poles | 33330 Hassted Dr., Malibu, CA 90205 | Lilac Meadow Investments, LLC | Storey Pole Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| Plus Design LLC | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Arlington Ridge Investments, LLC | Interior Design Services Agreement  for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Winding Road Investments, LLC | Real Estate Project Management Services Agreement  for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Winding Road Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Chestnut Investments, LLC | Real Estate Project Management Services Agreement  for 10733 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Chestnut Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 10733 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Chestnut Ridge Investments, LLC | Real Estate Project Management Services Agreement  for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Chestnut Ridge Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Arlington Ridge Investments, LLC | Real Estate Project Management Services Agreement  for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Arlington Ridge Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Bay Village Investments, LLC | Real Estate Project Management Services Agreement  for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Bay Village Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Pawtuckaway Investments, LLC | Real Estate Project Management Services Agreement  for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Pawtuckaway Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Crossbeam Investments, LLC | Real Estate Project Management Services Agreement  for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Hornbeam Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Elstar Investments, LLC | Real Estate Project Management Services Agreement  for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Elstar Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Squaretop Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Squaretop Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Squaretop Investments, LLC | Real Estate Project Management Services Agreement  for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Gravenstein Investments, LLC | Real Estate Project Management Services Agreement  for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Gravenstein Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Heilbron Manor Investments, LLC | Real Estate Project Management Services Agreement  for 2492 Mandeville Cyn. Rd., Los Angeles, CA 90049 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Heilbron Manor Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 2492 Mandeville Cyn. Rd., Los Angeles, CA 90049 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Silk City Investments, LLC | Real Estate Project Management Services Agreement  for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Silk City Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | White Birch Investments, LLC | Real Estate Project Management Services Agreement  for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | White Birch Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Green Gables Investments, LLC | Real Estate Project Management Services Agreement  for 41 King St., New York, NY 10014 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Green Gables Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 41 King St., New York, NY 10014 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Crossbeam Investments, LLC | Real Estate Project Management Services Agreement  for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Varga Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Varga Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Addison Park Invesments, LLC | Real Estate Project Management Services Agreement  for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Addison Park Invesments, LLC | Amendment to Real Esate Project Management Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Eldredge Investments, LLC | Real Estate Project Management Services Agreement for 714 N. Oakhurst, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Eldredge Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 714 N. Oakhurst, Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Lilac Meadow Investments, LLC | Real Estate Project Management Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Lilac Meadow Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Diamond Cove Investments, LLC | Real Estate Project Management Services Agreement for 1 Electra Ct., Los Angeles, CA 90046 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Graeme Park Investments, LLC | Real Estate Project Management Services Agreement for 1001 Hanover Dr., Los Angeles, CA | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Graeme Park Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1001 Hanover Dr., Los Angeles, CA | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Sagebrook Investments, LLC | Real Estate Project Management Services Agreement for 1260 Lago Vista Dr., Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Sagebrook Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 1260 Lago Vista Dr., Beverly Hills, CA 90210 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Sturmer Pippin Investments, LLC | Real Estate Project Management Services Agreement for 141 S. Carolwood Dr., Holmby Hills, CA 90024 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Grand Midway Investments, LLC | Real Estate Project Management Services Agreement for 800 Stradella Rd., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Bishop White Investments, LLC | Real Estate Project Management Services Agreement for 805 Nimes Pl., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Bishop White Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 805 Nimes Pl., Los Angeles, CA 90077 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Rising Sun Investments, LLC | Real Estate Project Management Services Agreement for 7909 Fountain Ave., West Hollywood, CA 90046 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Rising Sun Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 7909 Fountain Ave., West Hollywood, CA 90046 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Thornbury Farms Investments, LLC | Real Estate Project Management Services Agreement for 7870-7900 W. Granito Dr. (Lots 6 & 7), Los Angeles, CA 90046 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Thornbury Farms Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 7870-7900 W. Granito Dr. (Lots 6 & 7), Los Angeles, CA 90046 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Thornbury Farms Investments, LLC | Real Estate Project Management Services Agreement for 7870-7900 W. Granito Dr. (Lots 8 & 9), Los Angeles, CA 90046 | $0.00 |
| Plus Development | 8920 W. Sunset Blvd. Ste. 200A, West Hollywood, CA 90069 | Thornbury Farms Investments, LLC | Amendment to Real Esate Project Management Services Agreement for 7870-7900 W. Granito Dr. (Lots 8 & 9), Los Angeles, CA 90046 | $0.00 |
| Pro Systems | PO Box 7026, Van Nuys, CA 91409 | Chestnut Ridge Investments, LLC | Alarm System Services Agreement  for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| Pro Systems | PO Box 7026, Van Nuys, CA 91409 | Chestnut Ridge Investments, LLC | Security Camera System Services Agreement for 10750 Chalon Rd., Los Angeles, CA 90077 | $0.00 |
| Pro Systems | PO Box 7026, Van Nuys, CA 91409 | Cannington Investments, LLC | Alarm Monitoring Services Agreement  for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |
| Pro Systems | PO Box 7026, Van Nuys, CA 91409 | Cannington Investments, LLC | Alarm System Services Agreement  for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |
| Qwest Engineering, Inc. | 465 W 1st St., Tustin, CA 92780 | Squaretop Investments, LLC | Civil Engineering Services Agreement  for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Squaretop Investments, LLC | Lighting Design Services Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $1,250.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Addison Park Invesments, LLC | Lighting Design Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $150.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Square Top Investments, LLC | Lighting Design Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Arlington Ridge Investments, LLC | Lighting Design Services Agreement for 1357 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Bay Village Investments, LLC | Lighting Design Services Agreement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Pawtuckaway Investments, LLC | Lighting Design Services Agreement - Peer Review for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Elstar Investments, LLC | Lighting Design Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Robert Singer & Associates (RSA) | 655 E. Valley Rd. Ste. 200, Basalt, CO 81621 | Lilac Meadow Investments, LLC | Lighting Design Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| Rocha Nuez Associates | 28025 Dorothy Dr. Ste. 100, Agoura Hills, CA 91301 | Gravenstein Investments, LLC | Architecture Services Agreement Regarding Fire Dept Corrections for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Rocha Nuez Associates | 28025 Dorothy Dr. Ste. 100, Agoura Hills, CA 91301 | Silk City Investments, LLC | Architecture Services Agreement for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Ross Nesbit Agencies, Inc. | 5901 Rowland Rd Minnetonka MN 55343 | Whiteacre Funding LLC | Commercial Insurance, Policy No. CP 1635948A | $0.00 |
| Sage Group | 271 17th St. NW., Atlanta, GA 30363 | Woodbridge Group of Companies | Accounting Software Agreement | $0.00 |
| Sage Group | 271 17th St. NW., Atlanta, GA 30363 | Woodbridge Group of Companies | Accounting Software Agreement | $0.00 |
| Saota (PTY) Ltd. | 109 Hatfield St., Gardens 8001 South Africa | Crossbeam Investments, LLC | Architecture Design Services Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Silverleaf Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Silverleaf Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Ironsides Investments, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Whiteacre Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Red Woods investments LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Bellflower Funding LLC | Property and Liability Insurance, Policy No. 0799/REO702 Asset # 124297 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Bellflower Funding LLC | Property and Liability Insurance, Policy No. 0799/REO702 Asset # 124297 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Silverleaf Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Bellflower Funding LLC | Property and Liability Insurance, Policy No. 0799/REO702 Asset #130619 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Silverleaf Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Silverleaf Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Silverleaf Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Whiteacre Funding, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Woodbridge Mtg Investments | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| SCU/Crump's | 6075 Poplar Ave., Ste. 400, Memphis, TN 38119 | Ironsides Investments, LLC | Property and Liability Insurance, Policy No. 18LAP752899 | $0.00 |
| Small Insurance Co. | 16 S 7th St Stroudsburg, PA 18360 | Whiteacre Funding, LLC | Property and Liability Insurance, Policy No. 12PRM023852-02 | $0.00 |
| SoCal Gas | PO Box C, Monterey Park, CA 91756 | Gravenstein Investments, LLC | Gas Line Extension Agreement for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| SODA | 2121 E. 7th. Pl., Ste 215 Los Angeles, CA 90021 | Cannington Investments, LLC | Architecture Services Agreement for 1118 Tower Rd., Beverly Hills, CA 90210 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Lilac Meadow Investments, LLC | Mechanical, Electrical and Plumbing Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Winding Road Investments, LLC | Mechanical Engineering Agreement for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Bay Village Investments, LLC | Mechanical Engineering Agreement for 1432 Tanager Way, Los Angeles, CA 90069 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Squaretop Investments, LLC | Additional Work Order to Electrical Engineering Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Varga Investments, LLC | Mechanical, Electrical and Plumbing Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Varga Investments, LLC | Additional Work Order to Mechanical, Electrical and Plumbing Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Addison Park Invesments, LLC | Mechanical, Electrical and Plumbing Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| South Coast Engineering Group, Inc. | 5000 N. Parkway Calabasas #307, Calabasas, CA 91302 | Addison Park Invesments, LLC | Additional Work Order to Mechanical, Electrical and Plumbing Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Spectrum/Time Warner Cable Enterprises, LLC | 20950 Warner Center LN. Ste. C, Woodland Hills, CA 91367 | Woodbridge Group of Companies | Fiber Internet/Phone Agreement for corporate headquaters located at 14140 Ventura Blvd. Ste. 302, Sherman Oaks, CA 91423 | $0.00 |
| Spindler Engineering | 16823 Saticoy St., Van Nuys, CA 91406 | Addison Park Invesments, LLC | Additional Work Order to Civil Engineering Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $7,700.80 |
| Spindler Engineering | 16823 Saticoy St., Van Nuys, CA 91406 | Addison Park Invesments, LLC | Civil Engineering Services Agreement   for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |

| Contract Counterparty | Counter Party Address | Debtor-Party to Contract | Contract Type | Estimated Cure Amount |
|---|---|---|---|---|
| Splash Top Inc. | 1054 S. De Anza Blvd., Ste. 200, San Jose CA 95129 | Woodbridge Group of Companies | Remote Desktop for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| Standard LLP | 4411 Santa Monica Blvd., Los Angeles, CA 90029 | Pawtuckaway Investments, LLC | Architecture Services Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $9,262.50 |
| Standard LLP | 4411 Santa Monica Blvd., Los Angeles, CA 90029 | Pawtuckaway Investments, LLC | Architecture Services Agreement for 1471 Forest Knoll, Los Angeles, CA 90069 | $0.00 |
| Stephanie Ann Davis Landscape | 5837 Oak Bend Lane #202, Oak Park, CA, 91377 | Gravenstein Investments, LLC | Landscape Architectural Services Agreement  for 24055 Hidden Ridge Rd., Hidden Hills, CA 91302 | $0.00 |
| Stephanie Ann Davis Landscape | 5837 Oak Bend Lane #202, Oak Park, CA, 91377 | Silk City Investments, LLC | Landscape Architectural Services Agreement  for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Stephanie Ann Davis Landscape | 5837 Oak Bend Lane #202, Oak Park, CA, 91377 | White Birch Investments, LLC | Landscape Architectural Services Agreement  for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Studio Pali Fekete | 8609 Washington Blvd. Culver City, CA 90232 | Varga Investments, LLC | Architecture Services Agreement for 638 Siena Way, Los Angeles, CA 90077 | $15,858.10 |
| The Berwyn Group | 2 Summit Park Drive, Ste. 610, Independence, OH 44131 | Woodbridge Group of Companies | Mortality verification and locator services for Structured Settlements | $0.00 |
| Titan Contracting Services, Inc. | 13434 Raymer St., North Hollywood, CA 91605 | Eldredge Investments, LLC | General Contractor Agreeement for 714 N. Oakhurst, Beverly Hills, CA 90210 | $0.00 |
| Tracey Allison Interior Design | 23464 Park Colombo, Calabasas, CA 91302 | Silk City Investments, LLC | Interior Design Services Agreement  for 25210 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Tracey Allison Interior Design | 23464 Park Colombo, Calabasas, CA 91302 | White Birch Investments, LLC | Interior Design Services Agreement  for 25211 Jim Bridger Rd., Hidden Hills, CA 91302 | $0.00 |
| Travelers Workers Compensation Insurance | One Tower Square, Hartford, CT  06183 | Woodbridge Group of Companies | Workers Compensation Insurance  for corporate headquarters located at 14140 Ventura Blvd., Sherman Oaks, CA 91423 | $0.00 |
| Walker Workshop | 5574 W. Washington Blvd., Los Angeles, CA 90016 | Elstar Investments, LLC | Architecture Services Agreement for 1520 Carla Ridge, Beverly Hills, CA 90210 | $4,864.79 |
| Walker Workshop | 5574 W. Washington Blvd., Los Angeles, CA 90016 | Squaretop Investments, LLC | Architecture Services Agreement for 1966 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Wendland Construction Consulting, LLC | 6093 Crape Myrtle Ct., Woodland Hills, CA 91367 | Addison Park Invesments, LLC | Waterproofing Consultant Services Agreement for 642 St. Cloud, Los Angeles, CA 90077 | $0.00 |
| Western Built Construction, Inc. | 8033 Sunset Blvd. #5500, Los Angeles, CA 90046 | Casper Falls Investments, LLC | General Contractor Agreeement for 1420 Laurel Way, Beverly Hills, CA 90210 | $0.00 |
| Woods + Dangaran | 5835 West Adams Blvd., Culver City, CA 90232 | Crossbeam Investments, LLC | Executive Architecture Services Agreement  for 10721 Stradella Ct., Los Angeles, CA 90077 | $0.00 |
| Woods + Dangaran | 5835 West Adams Blvd., Culver City, CA 90232 | Crossbeam Investments, LLC | Architecture Services Agreement for 1484 Carla Ridge, Beverly Hills, CA 90210 | $0.00 |
| Woods + Dangaran | 5835 West Adams Blvd., Culver City, CA 90232 | Goose Rocks Investments, LLC | Architecture Services Agreement for 9127 Thrasher Ave., Los Angeles, CA 90069 | $0.00 |
| XTEN Architecture | 10315 Jefferson Blvd., Culver City, CA 90232 | Lilac Meadow Investments, LLC | Architecture Services Agreement for 9230 Robin Dr., Los Angeles, CA 90069 | $0.00 |

**EXHIBIT C**

Wind-Down Governance Agreement

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## WOODBRIDGE WIND-DOWN ENTITY LLC

This Limited Liability Company Agreement (this "Agreement") of Woodbridge Wind-Down Entity LLC, a Delaware limited liability company (the "Company"), is entered into as of this [___] day of [_____] by the Company's sole member, Woodbridge Liquidation Trust (the "Member"), pursuant to and in accordance with the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq.* (as amended, the "Act"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in that certain [*First*] *Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated [August 22], 2018 (as it may be amended, modified, supplemented or restated from time to time, the "Plan").

1.    Name.    The name of the limited liability company governed hereby is Woodbridge Wind-Down Entity LLC.

2.    Certificates; Fees and Expenses.    The Member or any Officer (as defined below) shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business. The Member hereby ratifies and approves all actions taken by the Company, any authorized person, any Manager (as defined below) or any Officer in connection with the formation of the Company prior to this Agreement. All fees and expenses incurred with respect to the organization, operation and management of the Company shall be borne by the Company.

3.    Purpose.    The purpose of the Company shall be (a) to accept, hold, administer and distribute the Wind-Down Assets in accordance with the provisions of the Plan and this Agreement; (b) to engage in such other activities and businesses that are necessary and/or incidental to the foregoing; and (c) consistent with the purpose of the Liquidation Trust as set forth in Section [5.4.4] of the Plan.

4.    Powers; Title to Property.    The Company shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company. All property owned by the Company shall be owned by the Company as an entity and the Member shall not have any ownership interest in such property in its individual name, and the Member's interest in the Company shall be personal property for all purposes. The Company shall hold title to all of its property in the name of the Company and not in the name of the Member.

5.    Principal Business Office.    The principal place of business and office of the Company shall be located, and the Company's business shall be conducted from, such place or places as may hereafter be determined by the Board (as defined below).

6.    <u>Registered Agent</u>.  The registered office of the Company required by the Act to be maintained in the State of Delaware shall be the office of the initial registered agent named in the Certificate of Formation of the Company or such other office (which need not be a place of business of the Company) as the Member may designate from time to time in the manner provided by the Act.  The registered agent of the Company in the State of Delaware shall be the initial registered agent named in the Certificate of Formation of the Company or such other Person as the Member may designate from time to time in the manner provided by the Act.

7.    <u>Term</u>.  The term of the Company commenced on the date of filing of the Certificate of Formation of the Company in accordance with the Act and shall continue until the dissolution of the Company in accordance with Section 17.

8.    <u>Limited Liability</u>.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and none of the Member, any Manager, any Officer or any employee or agent of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of acting in such capacity.

9.    <u>Members</u>.  The Member was deemed admitted as a member of the Company upon its execution and delivery of this Agreement.  The Member will at all times be the sole and exclusive owner of the Company, and the Company will not issue any equity interests to any other Person.

10.    <u>Additional Contributions</u>.  The Member is not required to make additional capital contributions to the Company.

11.    <u>Profits and Losses</u>.  The Member shall treat all items of income, gain, loss, deduction and credit of the Company as its own.

12.    <u>Distributions</u>.  Distributions of cash or other assets of the Company shall be made as and when determined by the Board in its sole discretion; *provided, however*, that commencing on the first Business Day that is no later than thirty (30) calendar days after the quarter-end of the first full calendar quarter following the Effective Date and continuing on the first Business Day that is no later than thirty (30) calendar days after each calendar quarter-end thereafter, the Company shall remit to the Member as of such quarter-end any Cash in excess of its budgeted reserve for ongoing operations, other anticipated Wind-Down Expenses and its other Plan obligations.

13.    <u>Wind-Down Board</u>.

(a)    Except as otherwise expressly provided herein, management of the Company shall be vested in a board of managers of the Company (the "<u>Board</u>"; and each member of the Board, a "<u>Manager</u>") comprised of (x) the CEO (as defined below) and (y) two (2) other natural persons, both of whom shall be appointed by the Member.  The Board shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, to effectuate and carry out the purposes and business of the Company.  To the extent of their powers set forth herein, the Board is an agent of the Company for the purpose of the Company's business and affairs, and the

actions of the Board taken in accordance with such powers set forth herein shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as set forth in a duly adopted resolution of the Board that is not inconsistent with this Agreement and the Plan, no individual Manager, in his or her capacity as such, shall have any authority to bind the Company. The initial Managers shall be as set forth on <u>Schedule A</u>.

(b)     Managers shall serve until they resign, die, become incapacitated or are removed. Any Manager may resign as such at any time upon giving not less than thirty (30) calendar days' prior notice thereof to the other members of the Board. Any Manager may be removed as such with Cause (as defined below) by the Member at any time. Any vacancy occurring on the Board may be filled by the Member and shall remain vacant until so filled. For purposes of this Agreement, "<u>Cause</u>" means, with respect to any Manager, (i) the embezzlement, misappropriation of any property or other asset of the Company; (ii) the commission of, or the entering of a plea of nolo contendere or guilty with respect to, any felony whatsoever or any misdemeanor involving moral turpitude; or (iii) any willful and material breach of the terms of this Agreement or the terms of the Plan applicable to such Manager.

(c)     A majority of the then serving Managers shall constitute a quorum for the transaction of business of the Board at a meeting of the Board and the act of a majority of the Managers present at a meeting of the Board at which a quorum is present shall be the act of the Board. Each Manager shall have one vote on all such matters. A Manager who is present at a duly called meeting of the Board at which action on any matter is taken shall be presumed to have assented to the action unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as Secretary of the meeting before the adjournment thereof or shall deliver such dissent to the Company immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Manager who voted in favor of such action. Meetings of the Board may be held at such place or places as shall be determined from time to time by resolution of the Board. At all meetings of the Board, business shall be transacted in such order as shall from time to time be determined by resolution of the Board. Attendance of a Manager at a meeting shall constitute a waiver of notice of such meeting, except where a Manager attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board need be specified in any waiver of notice.

(d)     Regular meetings of the Board, if any, shall be held without notice at such times and places as shall be designated from time to time by resolution of the Board. Special meetings of the Board, if any, may be called by any Manager on at least twenty-four (24) hours' notice to each Manager. Such notice to the Managers need not state the purpose or purposes of, or the business to be transacted at, such meeting, except as may be otherwise required by the Act. The Managers may participate in and hold a meeting of the Board by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in such meeting shall constitute attendance and presence in person at such meeting.

(e)     Any action permitted or required by the Act or this Agreement to be taken at a meeting of the Board may be taken without a meeting if a consent in writing (including

electronically), setting forth the action to be taken, is provided to each Manager and signed (or clearly indicated electronically) by each member of the Board. Such consent shall have the same force and effect as a vote at a meeting and may be stated as such in any document or instrument filed with the Secretary of State of the State of Delaware, and the execution of such consent shall constitute attendance or presence in person at a meeting of the Board. Such consent shall be filed with the minutes of the proceedings of the Board.

(f)     Subject to applicable withholding requirements, the compensation of each Manager (other than the CEO) for his or her service on the Board will be $20,000 per month for each calendar month of service during the first year after the Effective Date and $15,000 per month for each calendar month of service after the first year after the Effective Date. The Company shall also reimburse each Manager in respect of all actual, reasonable and documented out-of-pocket costs and expenses incurred by such Manager in accordance with Company policies.

(g)     Managers, in the performance of their duties as such, shall owe to the Company and its Members duties of loyalty and due care of the type owed by the directors of a corporation to such corporation and its stockholders under the laws of the State of Delaware.

14.     <u>Officers</u>.

(a)     The Board may, from time to time, designate and appoint one or more natural persons as an officer of the Company (each, an "<u>Officer</u>"). No Officer need be a resident of the State of Delaware, a Member or a Manager. Any Officers so designated shall have such authority and perform such duties as the Board may, from time to time, delegate to them. The Board may assign titles to particular Officers. Unless the Board otherwise decides and except as may otherwise be provided in any applicable written employment agreement, if the title is one commonly used for officers of a business corporation, the assignment of such title shall constitute the delegation to such Officer of the authority and duties that are normally associated with that office, subject to Section 14(d) and any other specific delegation of authority and duties made to such Officer by the Board. Each Officer shall hold office until such Officer's successor shall be duly designated and qualified or until such Officer's earlier death or earlier resignation or removal in the manner hereinafter provided. Any number of offices may be held by the same individual. The salaries or other compensation, if any, of the Officers and agents of the Company shall be fixed from time to time by the Board in accordance with the Plan. The Board hereby designates Frederick Chin to hold the office of "Chief Executive Officer" as of the Effective Date (the "<u>CEO</u>").

(b)     Any Officer (subject to any contract rights available to the Company, if applicable) may resign as such at any time; provided, that the CEO may only resign upon giving not less than thirty (30) calendar days' prior notice thereof in a notice Filed in the Chapter 11 Cases. Any Officer may be removed as such, either with or without cause, by the Board in its discretion at any time. Any vacancy occurring in any office of the Company may be filled by the Board, subject to the approval of the Member, and shall remain vacant until so filled.

(c)     Subject to the supervision of the Board and the provisions of this Agreement, the CEO shall have the authority and right, without the need for Bankruptcy Court approval (unless

otherwise indicated in the Plan), to carry out and implement all applicable provisions of the Plan for the ultimate benefit of the Member, including to:

       (i)      retain, compensate, and employ professionals and other Persons to represent the Company with respect to and in connection with its rights and responsibilities;

       (ii)     establish, maintain, and administer accounts of the Debtors as appropriate;

       (iii)    maintain, develop, improve, administer, operate, conserve, supervise, collect, settle, and protect the Wind-Down Assets (subject to the limitations described herein or in the Plan);

       (iv)    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Wind-Down Assets or any part thereof or any interest therein, including through the formation on or after the Effective Date of any new or additional legal entities to be owned by the Company to own and hold particular Wind-Down Assets separate and apart from any other Wind-Down Assets, upon such terms as the CEO determines to be necessary, appropriate, or desirable (subject to the limitations described herein or in the Plan), including the consummation of any sale transaction for any Wind-Down Assets as to which an approval order was entered by the Bankruptcy Court before the Effective Date;

       (v)     invest Cash of the Debtors and the Estates, including any Cash realized from the liquidation of the Wind-Down Assets, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b);

       (vi)    negotiate, incur, and pay the Wind-Down Expenses, including in connection with the resolution and satisfaction of any Wind-Down Claim Expenses;

       (vii)   exercise and enforce all rights and remedies regarding any loans or related interests as to which the lender was a Debtor and the underlying borrower actually is or actually was a Person that is not a Debtor, including any such rights or remedies that any Debtor or any Estate was entitled to exercise or enforce prior to the Effective Date on behalf of a Holder of a Non-Debtor Loan Note Claim, and including rights of collection, foreclosure, and all other rights and remedies arising under any promissory note, mortgage, deed of trust, or other document with such underlying borrower or under applicable law;

       (viii)  comply with the Plan, exercise the CEO's rights, and perform the CEO's obligations; and

       (ix)    exercise such other powers as deemed by the CEO to be necessary and proper to implement the provisions of the Plan.

    (d)    Officers, in the performance of their duties as such, shall owe to the Company and its Members duties of loyalty and due care of the type owed by the officers of a corporation to such corporation and its stockholders under the laws of the State of Delaware.

01:23666935.1

15.    <u>Certain Covenants</u>.

(a)    The Company shall advise the Member regarding the status of the affairs of the Company on at least a monthly basis and shall reasonably make available to the Member such information as is necessary for any reporting by the Member.

(b)    The Company shall advise the Member regarding any material actions by the Board, including the sale of any property prior to entering into a contract of sale or the change in course of the business plan agreed to as part of the Plan.  If there is any disagreement between the Company and the Member as to a material matter, in the first instance the Company and the Member shall seek to resolve their dispute regarding such material matter. In the event the Company and the Member cannot resolve the dispute, then no action will be taken regarding such material matter absent an order of the Bankruptcy Court.

(c)    Except as expressly provided herein (including, but not limited to, Section 14(c)) or may be approved by the Member, the Company shall not be entitled to encumber, invest or gift any of its assets or make asset acquisitions.

(d)    The Company shall be subject to the same limitations imposed on the Liquidation Trustee under the terms of the Plan and the Liquidation Trust Agreement.

16.    <u>Indemnification</u>.  The Company and the Member shall indemnify the Managers, the Officers and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, brokers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors (each, an "<u>Indemnified Party</u>") for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the applicable Indemnified Party (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct.  In addition, the Company and the Member shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Indemnified Parties, from and against and with respect to any and all losses, liabilities, damages, judgments, fines, penalties, claims, demands, settlements, costs, or expenses (including the reasonable fees and expenses of their respective professionals) arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Company or the implementation or administration of the Plan if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Company.  The costs and expenses incurred in enforcing the right of indemnification in this Section 16 shall be paid by the Company or the Member, as applicable.

01:23666935.1

17.    <u>Dissolution</u>.

(a)    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following:  (i) the written consent of the Member, (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act and (iii) the sale or other disposition of all of the Wind-Down Assets.

(b)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale or other transfer of the assets of the Company in an orderly manner).

18.    <u>Elections</u>.  The Member shall determine the accounting methods and conventions under the tax laws of any and all applicable jurisdictions as to the treatment of income, gain, loss, deduction and credit of the Company or any other method or procedure related to the preparation of such tax returns.  The Member may cause the Company to make or refrain from making any and all elections permitted by such tax laws.  Notwithstanding the foregoing, the Company shall be treated as a disregarded entity for income tax purposes.

19.    <u>Fiscal Year</u>.  The fiscal year of the Company for financial, accounting and income tax purposes shall be the same fiscal year as the Member.

20.    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

21.    <u>Counterparts</u>.  This Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

22.    <u>Entire Agreement; Conflicts</u>.  This Agreement, together with the Plan and the Liquidation Trust Agreement, constitutes the entire agreement of the Member with respect to the subject matter hereof.  In the event of any inconsistency or conflict between the terms hereof and (i) the terms of the Plan, the terms of the Plan shall govern and control in each instance, and (ii) the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall govern and control in each instance.

23.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

24.    <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Member, the Company, the Board and the Wind-Down Assets, including the determination of all disputes arising out of or related to administration of the Company.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Agreement or the administration of the Company.  The parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains

01:23666935.1

from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, then the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

25.    <u>Amendments</u>.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

26.    <u>Interpretation</u>.    The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.   In this Agreement, except to the extent the context otherwise requires, (i) reference to any Section, subsection, clause, Schedule, preamble or recital, is, unless otherwise specified, to that such Section, subsection, clause, Schedule, preamble or recital under this Agreement, (ii) the words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section of this Agreement, (iii) references to any document or agreement, including this Agreement, shall be deemed to include references to such document or agreement as amended, supplemented, replaced or restated from time to time in accordance with its terms and subject to compliance with any requirements set forth therein, (iv) references to any law, statute, rule, regulation or form (including in the definition thereof) shall be deemed to include references to such statute, rule, regulation or form as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, include any rules and regulations promulgated under such statute), and all references to any section of any statute, rule, regulation or form include any successor to such section, (v) references to any party hereto shall include its successors and permitted assigns, (vi) wherever the word "include," "includes" or "including" is used herein, it shall be deemed to be followed by the words "without limitation," and any list of examples following such term shall in no way restrict or limit the generality of the word or provision with respect to which such examples are provided, (vii) the words "shall" and "will" are used interchangeably throughout this Agreement, and the use of either connotes a mandatory requirement, (viii) the word "or" is not meant to be exclusive, and shall be interpreted as "and/or", (ix) unless otherwise specified, references to "day" or "days" are references to calendar days, (x) the terms "Dollars" and "$" mean United States Dollars, (xi) whenever the context required, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine and (xii) references to any time periods herein that are initiated by the receipt of a notice shall be deemed not to include the date such notice is received in the calculation of such time period.

*[The remainder of this page is intentionally left blank.]*

01:23666935.1

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

**MEMBER:**

WOODBRIDGE LIQUIDATION TRUST

By: _____
       Name:
       Title:

01:23666935.1

[SIGNATURE PAGE TO LIMITED LIABILITY COMPANY AGREEMENT OF WOODBRIDGE WIND-DOWN ENTITY LLC]

**<u>SCHEDULE A</u>**

**BOARD OF MANAGERS**

Richard Nevins

M. Freddie Reiss

Frederick Chin

# **EXHIBIT D**

Compensation Terms for the Wind-Down CEO

## EMPLOYMENT AGREEMENT TERM SHEET

This term sheet (this "**Term Sheet**") sets forth certain terms and conditions of the proposed employment relationship between Frederick Chin (the "**Wind-Down CEO**") and Woodbridge Wind-Down Entity LLC, a Delaware limited liability company (the "**Wind-Down Entity**").  This Term Sheet is not intended to constitute a complete statement of such terms and conditions or a legally binding agreement between the parties.  The specific terms and conditions governing the Wind-Down CEO's employment will be set forth in a mutually acceptable, definitive employment agreement entered into between the parties.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan.

| | |
|---|---|
| Position | Chief Executive Officer |
| Employment Term | Initial term of two years and six months, subject to automatic renewal for up to two quarterly renewal periods if the wind down of the Wind-Down Entity has not been completed on or before the end of the then-current term (the "**Employment Term**"). |
| Base Salary | $750,000 per year. |
| Wind Down Bonus | For the Employment Term, up to $2,000,000 in the aggregate based on the amount of distributions from the Wind-Down Entity to the Liquidation Trust ("**Distributions**"). |
| Annual Bonus | For the Employment Term, up to $3,000,000 in the aggregate for all annual periods based on an agreed formula relating to the amount of Distributions for the annual periods. |
| Benefits and Perquisites | Four weeks paid vacation and participation in the Wind-Down Entity's employee benefit plans and programs. |
| Definitions of "Cause" and "Good Reason" | Each of "Cause" and "Good Reason" will be defined as is reasonable and customary for similarly situated executives. |
| Termination Rights | Each of the Wind-Down CEO and the Wind-Down Entity may terminate the Wind-Down CEO's employment for any reason on at least 30 days' prior written notice; provided, that termination will be effective immediately upon termination for Cause or upon the Wind-Down CEO's death. |
| Severance upon Termination for Cause or Resignation Without Good Reason | To be set forth in the definitive employment agreement. |
| Severance upon Termination Without Cause or Resignation for Good Reason | To be set forth in the definitive employment agreement. |
| Provisions Regarding Disability or Death | To be set forth in the definitive employment agreement. |
| Governing Law | California. |